MAGGIE O. SMITH V. ETHAN A. SMITH.

22  699
51  509

1. DIVORCE; *Gross Neglect of Duty, Not Shown.* In an action by the wife for a divorce, on the ground of gross neglect of duty, the testimony showed that on April 30, 1878, at her husband's suggestion, she left home for a visit at her sister's in Massachusetts; that he then purchased her a ticket, and gave her sixty dollars in money, promising to send more as she needed it. She wrote for money in August, and he replied, promising again to send her money, but sending none. This was repeated several times; and from the time of her departure he ceased all contributions toward her support. In fact, when he suggested the visit he intended a separation. She remained with her sister until November, when she returned; but he declined to receive her into his house, or resume marital relations with her. During her entire absence her health was poor, and in September and October she was confined to her bed, and under the care of a physician. Of this he had information. He had means, and was able to support her, while she had no property except a piano. There was no testimony tending to show that his conduct toward her, or his failure to support her, was accompanied with any insult, indignity, or any circumstances of aggravation or cruelty other than as above stated, nor was there any testimony as to her present health or ability to support herself by her own labor. The action was commenced March 1, 1879. The district court refused to grant her a divorce. *Held,* No error. *Held further,* That though the testimony shows an abandonment by him, yet the statute names "abandonment for one year" as a ground for divorce, and that a mere abandonment for less time, without any circumstances of aggravation or cruelty, although it implies a total neglect of all marital duty, cannot be considered as equivalent to "gross neglect of duty."

2. ACTION, *Brought Prematurely; Practice.* A party who commences suit before his cause of action has accrued, cannot, after it accrues, as a matter of right, file a supplemental petition, showing that fact; and where the refusal of the court to grant leave to file such petition works no other hardship than delay and costs, ordinarily such refusal will not be ground for reversal.

*Error from Douglas District Court.*

ACTION for divorce, brought by *Maggie O. Smith* against *Ethan A. Smith.* Trial at the April Term, 1879, of the district court, and judgment for defendant. The plaintiff brings the case to this court. The facts sufficiently appear in the opinion, *infra.*

*Owen A. Bassett,* for plaintiff in error.

*John Q. A. Norton,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action for divorce, and the first question is, whether the testimony which is not contradictory makes out "gross neglect of duty" within the meaning of those terms as used in the divorce statute. The case is thus: On April 30, 1878, plaintiff, at the suggestion of defendant, left their home in Lawrence, to visit her sister in eastern Massachusetts. The defendant purchased her a ticket and gave her sixty dollars, promising to send her more from time to time. She wrote for money the first time in August, and he replied, again promising money, but sending none. This was repeated several times. And he has since in no manner contributed to her support. In fact, when he suggested the visit, he intended a separation, and that she should never return. She remained with her sister until the last of November, when she returned to Lawrence. During her entire absence, her health was poor, and in September and October she was confined to her bed and under the charge of a physician. On her return to Lawrence, being advised that her husband did not wish her to come to his home, she went to a neighbor's, where she continued to live until the commencement of this action. Upon an interview with her husband, he declined to permit her to return to his house, and has continued to so decline. He has means, and is able to support her, while she has no property other than a piano. The testimony is silent as to her present health, or her ability to support herself by her own labor. The action was commenced March 1, 1879.

Upon these facts, did the court err in finding that there had been no gross neglect of duty within the scope of the divorce act? We think not. The expression, "gross neglect of duty," is indefinite, and it is difficult to lay down any general rule by which every case can be determined to be within or without its limits. Each case must be examined by itself.

And yet an examination of the whole body of the divorce act will suggest certain things as to the legislative intent in this expression. And first, it is not mere neglect of marital duty. The adjective "gross," whatever may be said of it as a mere term of vituperation in other relations, here has legal force as descriptive of the conduct of the party neglecting duty. If it were not so, and any mere neglect of duty were ground for divorce, the aid of the courts might as well be abandoned, and voluntary separation permitted. There must not only be a default, but the default must be attended with circumstances of indignity or aggravation.

Again, the term "gross" cannot be equivalent to the word "total." It is not the total, the entire neglect of all marital duty, which is intended by this expression. That is covered by another term, "abandonment." But abandonment, which is a neglect or omission of all marital duty, must continue for a year. That being named as one of the grounds of divorce, and the duration of such abandonment prescribed, nothing less than the time prescribed will suffice. An abandonment for one month or ten, although it involves a total neglect of all marital duty, is not gross neglect of duty within the statute. Something more than mere neglect, although it is a neglect of all duty, is requisite. If neglect alone is shown, it must be a total neglect, and continue for a year.

Authorities are few, yet we find these which throw some light upon the question. The statute of Massachusetts authorized a divorce "when the husband, being of sufficient ability, grossly or wantonly and cruelly refuses or neglects to provide suitable maintenance for her." In the case of *Peabody v. Peabody*, 104 Mass. 195, it was held that the mere neglect of a husband, with no circumstances of aggravation, to provide maintenance for his wife and children for fifteen years, during which she supported the children from her own earnings, is not such gross or wanton and cruel neglect as will sustain a libel for divorce. In *Holt v. Holt*, 117 Mass. 202, the evidence was, that the husband left the wife without cause, and remained away for ten months without providing

for her; that they afterward lived together until about a year prior to the action, when she shortly before confinement went at his request to her aunt's house, and he again left her without means of support, or of paying the expenses of her confinement, and never again contributed to her support. He was able to support her, but there was no testimony concerning her ability to support herself. A divorce was refused, and the ruling sustained.

This in many respects resembles the case at bar, though in some features is stronger in favor of divorce, and against the conduct of the husband. See also, *Brown v. Brown*, 22 Mich. 242. Now the testimony in this case shows abandonment, but abandonment without circumstances of indignity, aggravation or cruelty. The defendant sent his wife ostensibly on a visit to her sister, paid her expenses, and gave her a small sum for temporary support. It would seem to have been an abandonment with as little of indignity or insult as possible. She was not turned out among strangers, or with nothing. No act of cruelty, no word of insult, no circumstance of aggravation. Conceding the wrong in the abandonment, that seems to have been the extent of the wrong. Her subsequent sickness does not appear to have been an anticipated one. She was not sent away in expectation of confinement, or with a babe, or in a condition of present suffering and weakness. For aught that appears, in perfect health, and with mutual ability to labor and support themselves, they parted, he being the party seeking and causing the separation. In other words, in the matter of abandonment he was the wrong-doer. But that abandonment not having lasted for a year, we cannot hold that the court erred in not calling it gross neglect of duty.

The other question presented arises out of the refusal of the court to give leave to file a supplemental petition. On May 10, the testimony having been all taken before a referee and reported to the court, application was made for leave to file a supplemental petition, alleging abandonment for one year. The application was refused. Was this error, and such error as

compels a reversal? We think not. We do not understand that a party may commence suit before a cause of action accrues, and then after it accrues, as a matter of right, file a supplemental petition alleging the facts showing this. A party may not sue on a note two months before it matures, and then upon maturity, demand, as a right, the filing of a supplemental petition showing the maturity. We do not mean that a court may not allow this, or that it may never be done. But it is not a matter of right. The circumstances must be such as to excuse the premature commencement of the action, and to show that the interests of justice require the change, rather than the dismissal of the present and the commencement of a new action. And in this, much must be left to the discretion of the trial court. Unless some greater wrong is shown than the mere matter of delay and costs, ordinarily the action of the court in refusing leave to file a supplemental petition will not be ground for reversal. Here the action was commenced March 1, and the application for supplemental petition made May 19, not three months thereafter. The defendant entered his appearance without summons, and filed an answer March 3, and the same day, by consent, one case was referred to a referee to take testimony. The testimony is short. So that neither delay nor expense would have been great if the suit had been dismissed, and a new one commenced. Further, it is not entirely clear that the proof makes out the abandonment for one year as alleged. Only nineteen days over a year had elapsed since she left Lawrence, supplied with means for present support. By her own testimony, she did not call for further support till the August following. If he furnished her with support until then, can it be held that he abandoned her earlier than that? It is scarcely necessary, however, to decide this. We only suggest it as one reason which may have influenced the court in refusing the application.

We make one further suggestion in closing this opinion, and that is, that as a rule haste in divorces is not wise. Courts should not be eager to advance or grant them. They

should discourage rather than encourage them. Marriage is a contract, and a relation which if possible should endure, and public policy requires that there be no straining of law or facts to end the contract and sever the relation. Time will heal many estrangements, and bring together those whom temporary feeling has alienated. And courts having ever in view the public good may often wisely use their discretion to give time and opportunity for reconciliation.

The judgment will be affirmed.

All the Justices concurring.