No. 37,395

W. I. WALTON, *Appellee*, v. VIOLA WALTON, *Appellant*.

(202 P. 2d 197)

Opinion filed January 22, 1949.

*Howard W. Harper,* of Junction City, argued the cause, and *Lee Hornbaker,* of Junction City, was with him on the briefs for the appellant.

*C. L. Hoover,* of Junction City, argued the cause, and *Robert A. Schermerhorn,* of Junction City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for divorce instituted by the husband. The defendant's demurrer to plaintiff's evidence was overruled and from that order his wife appeals.

Plaintiff sought a divorce on the grounds of extreme cruelty and gross neglect of duty. The defendant, in her answer and cross petition, denied the charges and sought a judgment for separate maintenance.

Facts disclosed by plaintiff's evidence were, in substance, as follows: He was seventy-seven years of age and weighed well under 100 pounds; his wife was approximately forty-seven years of age, weighed approximately 160 pounds and was a strong, vigorous woman; the parties had been acquainted six or seven years prior to

their marriage on November 28, 1947, and lived together only about thirty days after their marriage; at the time of their marriage plaintiff owned his home, two lots of ground, a 1930 Ford automobile and had less than $500 in cash; the defendant had no funds but a small amount of furniture; both parties had been married previously; the defendant had two sons living with her at the time of the marriage who were of age and independent; one of them had been married and divorced; immediately following the marriage the defendant and her two sons moved into plaintiff's home; there were three bedrooms in the home and plaintiff and defendant used the front bedroom; one of· defendant's sons used the middle bedroom and the other son occupied the rear bedroom; a wooden bed owned by the defendant was placed in the front bedroom and an iron bed owned by the plaintiff was placed in the middle bedroom.

Trouble between the· parties started approximately two weeks after their marriage; it arose over money matters; the defendant inquired of the plaintiff how much money he had and was advised he had less than $500; upon learning that fact the defendnt became very angry, cursed him and struck him twice; he had a bad cold and a sore lung; the plaintiff was unable to defend himself against the defendant's attack; ,he said, "I just sat there and looked at her. What could I do?" The defendant had cursed plaintiff on various occasions; shortly after the assault just mentioned plaintiff returned to his· home after having been in Junction City and found that ·defendant had moved her bed out of ·the front bedroom and had moved plaintiff's iron bed back into that room; defendant had arranged a small bed or cot for her son in the middle bedroom and from that time the defendant no longer slept with plaintiff but occupied the middle bedroom with one of her sons; the defendant continued to quarrel with plaintiff concerning the amount of money he had and cursed him on each occasion the money matter was mentioned; the conduct of defendant had caused him to worry and to become very nervous; he was afraid to remain in the home; on the morning of December 28 plaintiff's friend, August Kessler, came to the home and found defendant crying; plaintiff went to the home of Mr. Kessler and remained there until December 30; when plaintiff returned to his home with his son he found the defendant had moved all of her furniture out of the house and had returned with her two sons to the house occupied by them previous to the marriage.

Only the fact that defendant's bed had been moved from the

front room where the parties had slept to the middle room and the fact that defendant had left plaintiff's home are corroborated.

Defendant demurred to the evidence on the ground it failed to establish a cause of action. In support thereof it is contended (1) the evidence failed to establish gross neglect of duty or extreme cruelty even if acts pertaining thereto had been corroborated, and (2) that evidence of such acts was not corroborated.

Touching the first contention plaintiff seeks to support the order overruling defendant's general demurrer on the theory the evidence established extreme cruelty of a nature sufficient to destroy the objects of matrimony. It may, of course, be conceded that some acts of an extreme character might completely defeat the legitimate ends of matrimony and render a reconciliation utterly impossible even though they had extended only over a limited period of time. (*Hayn v. Hayn*, 162 Kan. 189, 193, 175 P. 2d 127; *Davis v. Davis*, 162 Kan. 701, 704, 178 P. 2d 1015.) If the acts of a party, over a very brief period, had such an effect it would seem there should be some direct evidence disclosing that effect or evidence which could leave little, if any, doubt on the subject. In the instant case we find no direct evidence on that subject. With respect to legitimate inferences which reasonably might be drawn from the evidence on that point we manifestly would refuse to interfere with the findings of a trial court in the event there was testimony to support such an inference.

Here, of course, there were no findings of fact. The ruling was on a demurrer to plaintiff's evidence. We are forced to conclude the trial court believed the evidence warranted an inference that the legitimate ends of matrimony had been destroyed.

But does that conclusion, based on such evidence alone, entitle a party to a decree of divorce? This brings us to the second contention that a divorce may not be granted without corroborating evidence. Our statute, G. S. 1935, 60-1509, on the subject of divorce provides:

"*Provided, however,* That nothing in this act shall be construed as authorizing the granting of a decree of divorce upon the uncorroborated testimony of either husband or wife, or both of them."

Counsel for plaintiff argue there was some corroborating testimony. That testimony, however, pertained only to the moving of the bed and to defendant's leaving the home of the plaintiff. There was no corroboration of the alleged extreme cruelty which occurred

prior to the two above mentioned acts of the defendant. In other words there was no corroboration of the acts of extreme cruelty, the cursing and beating of the plaintiff, which were the real basis for divorce.

On behalf of plaintiff it is argued it is not necessary that every act relied upon should be corroborated where some of the indignities and abuses are of a nature to make it impossible to procure a corroborating witness, citing *Craig v. Craig*, 112 Kan. 472, 212 Pac. 72. In that case it was, however, also said:

"Besides, there were some circumstances in the evidence which tended to corroborate plaintiff's testimony." (p. 480.)

The case is not very helpful on the point at issue here for the reason that the nature of the corroborating evidence is not disclosed in the opinion.

Without indulging in an extensive review of the authorities and disclaiming an attempt to bring all decisions into perfect harmony we think it a correct conclusion to say that in states with a corroborating statute such as ours the corroborating evidence must pertain to the grounds upon which a divorce is sought and may be obtained. (*Frye v. Frye*, 134 Kan. 3, 4 P. 2d 415; *Hayn v. Hayn*, supra, *Reiter v. Reiter*, 162 Kan. 275, 176 P. 2d 260; 17 Am. Jur., Divorce and Separation, § 386.)

Of course, where an essential fact is difficult of proof the corroboration of that fact may in some cases be sufficient though weak. This rule, however, does not preclude the necessity for testimony which corroborates, or tends to corroborate, an essential ground for divorce.

Counsel for plaintiff reminds us that in some of our cases we have recognized that the purpose and intent of the corroboration rule is to prevent collusion, connivance or fraud, citing *Frye v. Frye*, supra. It is argued that since, obviously, no such situation obtained in the instant case no reason exists for the application of the rule. In the same opinion, however, other reasons for the rule were also stated, as follows:

"The state is interested in the marriage relation and the fostering, protecting and permanency of it as an institution of society. The state is interested in preventing the disruption of the marital relation upon petty or unimportant causes or for any reason other than those prescribed by the legislature as grounds for the dissolution of the relation." (p. 4.)

Furthermore, we are compelled to observe the statutory provision for corroboration contains no exceptions. We realize that experi-

enced and conscientious trial judges are often confronted with perplexing problems arising under this statute. Relief therefrom, however, is a legislative and not a judicial function.

One other contention will be noted. It is argued defendant's moving of her own bed at the time and in the manner indicated together with her return to her former place of residence constituted separate acts of extreme cruelty. It is exceedingly doubtful if the very meager evidence in the record before us on those two matters could be termed cruelty in the proper sense of that term. Absent other facts we have no hesitancy in declaring they did not separately or together constitute *extreme* cruelty and that corroboration thereof did not justify the granting of a divorce.

Defendant stood on her demurrer and the court granted plaintiff a divorce. The judgment is reversed with directions to enter judgment for the defendant on the divorce feature of the case, that being the only subject presently before us.