No. 39,436

MABLE ROSANDER, *Appellant,* v. CARROLL G. ROSANDER, *Appellee.*

(276 P. 2d 338)

Opinion filed November 13, 1954.

*J. R. Rhoades,* of McPherson, argued the cause, and *George R. Lehmberg,* of McPherson, was on the briefs for the appellant.

*E. W. Jernberg,* of Lindsborg, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action for divorce instituted by the wife. Defendant's demurrer to the plaintiff's evidence was sustained, and from that order she appeals.

Plaintiff sought a divorce on the grounds of fraudulent contract, gross neglect of duty and extreme cruelty. The defendant in his answer denied the charges.

The facts disclosed by plaintiff's evidence were, in substance, as follows: Plaintiff first met defendant in 1945, and after approximately one year of courtship they were married in June, 1946, the plaintiff then being twenty and the defendant twenty-five years of age. At the time of the trial, the parties were twenty-eight and thirty-two years of age, respectively. When defendant obtained the marriage license in June, 1946, he made an affidavit to the effect that he was not and had never been afflicted with epilepsy (G. S. 1949, 23-121). Shortly after their marriage, plaintiff discovered that her husband was suffering from a difficulty. She did not exactly know he had this difficulty at the time of their marriage, and there was nothing which caused her to believe there was anything particularly wrong with him. About three months after their marriage he had an attack and fainted. At that time she discovered he was taking medicine he had received from Chicago. These attacks

occurred about once a month and his condition grew worse during the first year. He went to a chiropractor and was advised he had a vertebra out of place in his neck. The chiropractor gave him treatments and discontinued the use of the medicine. The situation continued to grow worse, and in 1950 they consulted a medical doctor at Lindsborg, who advised plaintiff that defendant was suffering from epileptic attacks, and he was taken to Kansas City. Prior to this time she thought he was just having fainting spells. After his return from Kansas City, he was again put on medicine which seemed to relieve him as he was not as bad after he came home. He continued, however, to have the attacks and would fall, but would not be in a convulsive state like he was before he went to the medical doctor. These attacks continued until she separated from him and started the divorce proceedings. Plaintiff's testimony further disclosed that she and defendant lived in a combination filling station and home. After the marriage, she worked in cafes and a grocery store until 1950, when she took over the responsibility of managing the filling station in addition to her household duties, and looking after defendant when his attacks occurred. In March, 1953, defendant entered into a partnership automobile salvage business. The following May it was terminated. It became necessary for defendant to borrow $300 to pay his indebtedness to his partner, which he did without consulting plaintiff. She stated one of the reasons she left defendant was because she did not want to pay this $300.

Dr. Murfitt testified that defendant had been his patient since February, 1950, and that his condition was that of an epileptic, and that persons in his condition would ordinarily have to seek self-employment, as most people would not hire them. He testified as to the medical expense and that it would be necessary for defendant to have future medical care. He also treated him for thrombophlebitis of his legs which caused swelling of the tissues, and for that purpose he needed hepo-hepin which was the reason for the high medical expense in 1950, that he was not entirely cured, and it would be necessary for him to be treated in the future.

Plaintiff's remaining evidence went to the value of the real and personal property of the parties.

Defendant demurred to the plaintiff's evidence on the ground it failed to establish a cause of action, which demurrer was sustained generally by the court.

It was defendant's contention that plaintiff's evidence was not corroborated by other evidence.

G. S. 1949, 60-1509, provides:

"In all actions for divorce . . ., hereafter to be tried, the parties thereto, or either of them, shall be competent to testify upon all material matters involved in the controversy to the same extent as other witnesses might do: *Provided, however,* That nothing in this act shall be construed as authorizing the granting of a decree of divorce upon the uncorroborated testimony of either husband or wife, or both of them."

It is well settled in this state that there must be corroborated evidence of the testimony given by the complaining spouse as to the delinquencies of the defendant spouse alleged as grounds for the divorce. The provisions of the mentioned statute contain no exceptions, and courts are not permitted to nullify its intendment by reading exceptions into it. (*Frye v. Frye,* 134 Kan. 3, 4 P. 2d 415; *Walton v. Walton,* 166 Kan. 391, 202 P. 2d 197; *Smeltzer v. Smeltzer,* 175 Kan. 293, 262 P. 2d 826; *Thornbrugh v. Thornbrugh,* 175 Kan. 56, 259 P. 2d 219.)

In examining the record of plaintiff's evidence, we find that any evidence bearing on the gross neglect of duty and extreme cruelty is meager, and wholly the testimony of plaintiff, and not corroborated. Accordingly, the trial court was correct in holding no divorce could be granted on these grounds.

Plaintiff further contended that, prior to and at the time of their marriage, defendant was an epileptic; that such fact was known to the defendant and unknown to plaintiff, and by reason of the concealment of such fact from the plaintiff, she should have been granted a divorce on the ground that the contract of marriage entered into between the parties was fraudulent.

G. S. 1949, 23-120, provides:

"No woman under the age of forty-five years, or a man of any age, except he marry a woman over the age of forty-five years, either of whom is epileptic, . . . shall hereafter intermarry or marry any other person within this state. . . ."

Other statutes provide that no marriage license shall be issued to such person, and require the party applying for a marriage license to make an affidavit that neither applicant nor the person he or she is expecting to marry has ever been afflicted with epilepsy (23-121); that no one shall perform the marriage ceremony for such persons (23-122), and that any person who knowingly violates the mentioned statute shall upon conviction be subject to a penalty (23-123).

It is conceded by the parties that a marriage between an epileptic and another person is not void where the statute merely forbids it under penalty of imprisonment (*In re Estate of Strohmeier,* 164 Kan. 675, 679, 192 P. 2d 181; *Gould v. Gould,* 78 Conn. 242, 61 A. 604, 2 L.R.A. [NS] 531; *Behsman v. Behsman,* 144 Minn. 95, 174 N. W. 611, 7 A.L.R. 1501), nevertheless one induced by fraudulent concealment to marry an epileptic, forbidden by the mentioned statute to marry, is entitled to a divorce on the ground of fraudulent contract (60-1501) (Seventh). The fraud which makes the contract of marriage fraudulent is a fraud in law and upon the law. Such a fraud is accomplished whenever a person enters into this contract knowing that he is an epileptic, yet in order to induce the marriage, designedly and deceitfully conceals that fact from the other party who is ignorant of it and has no reason to suppose it to exist.

This brings us to the question of the sufficiency of plaintiff's evidence on the ground of fraudulent contract. If the plaintiff is to be granted a divorce on that ground, she must sustain the burden of proving it.

A careful examination of the record fails to reveal any evidence that the defendant knew at the time of making the affidavit to obtain a marriage license, or at the time of the marriage, that he was afflicted with epilepsy. There was no showing that defendant in any manner attempted to conceal his ailment, or that he had any conception of the nature of his affliction. On the contrary, the evidence does disclose that while he was taking medicine at the time of the marriage, he was subsequently treated by a chiropractor for a dislocated vertebra, and that his epileptic condition was not discovered until he was examined by a medical doctor in the year 1950, approximately four years after the marriage.

After a careful examination of the evidence, we are unable to say that the plaintiff sustained the burden of proving the facts necessary to constitute a fraudulent contract as a ground for divorce.

Plaintiff also complained that the trial court abused its discretion in refusing to make disposition of property after refusing the divorce. G. S. 1949, 60-1506, provides the court *may* make disposition of the property of the parties in any case where a divorce is refused. However, such discretion lies with the trial court and in the absence of abuse of that discretion, the ruling will not be disturbed. Under the facts in this case, there is no showing that the trial court abused its discretion in this manner.

In view of what has been said, it is unnecessary to discuss the questions raised in plaintiff's post-trial motions. It follows that the judgment must be affirmed.

It is so ordered.

HARVEY, C. J., dissents.