No. 40,800

CHRISTEEN E. KELSO, *Appellant,* v. JAMES I. KELSO, *Appellee.*

(324 P. 2d 165)

Opinion filed April 12, 1958.

*Martin C. Crawn,* of Kansas City, argued the cause and was on the briefs for appellant.

*James Yates,* of Kansas City, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a divorce action in which the husband was granted a divorce from the wife on his cross petition and awarded a judgment in the sum of $15,000.00 as his share of the accumulated property. The wife appeals.

Briefly, the questions presented for review are whether the evidence sustains the findings of the trial court and whether the judgment making a division of the property complies with G. S. 1949, 60-1511.

In her petition, filed May 2, 1955, the plaintiff alleged, among other things, her marriage to the defendant and that he had been

guilty of gross neglect of duty and extreme cruelty. She also alleged that at the time of her marriage she was the owner of certain real estate, hereafter described in the journal entry, and personal property.

The defendant filed an answer admitting the marriage, among other things, denying that he was guilty of the grounds for divorce alleged by the plaintiff, and filed a cross petition. In his cross petition defendant alleged the plaintiff was guilty of gross neglect of duty and extreme cruelty. He also set up at great length his version of the accumulation of property during the marriage, and prayed for a divorce and for a fair and equitable division of property. He sought judgment against the plaintiff in the sum of $22,450.00.

Plaintiff's reply was a general denial.

In addition to the testimony of the plaintiff and the defendant the trial court heard twenty witnesses testify in the trial of this case. The ruling was taken under advisement, the parties submitted briefs and on the 7th day of January, 1957, the court announced its decision. The journal entry recited findings as follows:

"1. That the plaintiff and defendant have been actual residents in good faith of the State of Kansas for more than one year next preceding the filing of the petition and answer herein, and were at the filing thereof, actual residents of Wyandotte County, Kansas.

"2. That plaintiff and defendant were legally married on the 31st day of March, 1950, at Lincoln, Nebraska.

"3. That no children were born as the issue of said marriage and none are expected; but plaintiff and defendant did legally adopt, during the marriage, one girl child, Sharon Sue Kelso, now 6 years of age. The plaintiff is a fit and proper person to have custody of said child, and should have the custody, subject to reasonable visitation rights of the defendant.

"4. The defendant has performed his duties as the husband of the plaintiff, but the plaintiff has been guilty of gross neglect of duty toward the defendant, and the defendant should be granted a divorce from the plaintiff.

"5. That prior to the marriage plaintiff owned the following described real property, being the only real property involved in the above cause in which defendant claims an interest, to-wit:

"Lots 12 and 13, Block 1, in Clifton Hills, an addition in Kansas City, Wyandotte County, Kansas;

And

"A 193 acre farm in Leavenworth County, Kansas.

"6. That during said marriage, through their joint efforts, they accumulated property and improved plaintiff's property above described whereby the value of said properties increased by approximately $30,000.00, and that $15,000.00 over and above any setoffs and counterclaims of plaintiff should be given to the defendant as his share of said accumulation and improvement, which amount should be a lien on all property owned by plaintiff, including:

"[a.] Lots 12 and 13, Block 1, in Clifton Hills, an addition in Kansas City, Wyandotte County, Kansas;
                                    And
"[b.] The North 76.4 feet of Lots 5 and 6, Block 1, in Reynolds Grandview Park, an addition in Kansas City, Wyandotte County, Kansas;
                                    And
"[c.] A 193 acre farm in Leavenworth County, Kansas.

"7. The defendant should pay to the plaintiff the sum of $12.50 per week, commencing this date, as and for the support of the parties' minor child, Sharon Sue Kelso."

Pursuant to the foregoing findings the court decreed that the defendant be divorced from the plaintiff; that the plaintiff have the care, custody and control of the parties' minor child, Sharon Sue Kelso, subject to reasonable visitation rights of the defendant; and that the defendant pay the sum of $12.50 per week, commencing on the 7th day of January, 1957, as and for the support of said child. The journal entry then recites:

"It Is Further Considered, Ordered, Adjudged and Decreed that the defendant be and is hereby allowed the sum of Fifteen Thousand Dollars ($15,000.00) for his share of the accumulation of personal property and for improvements made through the joint efforts of plaintiff and defendant on real property which plaintiff owned prior to her marriage to defendant, and for profit derived from the sale of real property consisting of a farm in Leavenworth County, Kansas, of 190 acres hereinafter set out under item 'c' that belonged to plaintiff prior to said marriage which was sold on Option Contract and on which there is a balance to be paid of $20,000.00, *over and above and clear of any setoffs and counterclaims of the plaintiff against the defendant, and that said sum be and it is hereby made a lien on all of the property owned by the parties hereto,* including:
                [All real estate described in Finding No. 6.]
"That all the remainder of the parties' property, except the personal effects of the defendant now in his possession, be and it hereby is awarded to the plaintiff subject to the lien of the defendant described above.
"It Is Further Considered, Ordered, Adjudged and Decreed that the court costs be assesed against the plaintiff." (Emphasis added.)

The plaintiff filed a motion for a new trial which was presented to The Honorable O. Q. Claflin, III, successor to Judge Fischer. Subsequent to denying the motion Judge Claflin stated in an order denying the plaintiff's application for a change of venue: "I read the record, thought there was ample evidence to sustain Judge Fischer's decision and found there was no basis for a new trial or for setting aside the judgment."

The parties stipulated among other things that ". . . there is now accrued unpaid support money for the support of one minor

child in the amount of $980,00." They also stipulated that the defendant (appellee) ". . . bases his claims on services performed pertaining to real properties at 2500 Grandview and the farm in Leavenworth County, Kansas, and accumulations of properties;".

The plaintiff (appellant) contends that the defendant (appellee) did not testify or even intimate that plaintiff was ever neglectful of her duties as his wife and that there was certainly no corroborating testimony to this effect. (Citing G. S. 1949, 60-1509, and *Rosander v. Rosander*, 177 Kan. 45, 276 P. 2d 338.)

It is not the function of this court but the duty of the trier of the facts to determine both the credibility and the weight of the conflicting testimony. When these questions have been resolved by the trial court our responsibility is limited to determining whether there is substantial evidence, which, if believed, supports or tends to support the finding made. (*Irwin v. Irwin*, 162 Kan. 185, 174 P. 2d 1021; and *Hayn v. Hayn*, 162 Kan. 189, 175 P. 2d 127.) In the instant case no specific findings were requested or made. The trial court simply made a general finding in favor of the defendant that plaintiff had been guilty of gross neglect of duty toward the defendant, and that the defendant should be granted a divorce from the plaintiff. Such finding carries with it as established all the facts necessary to support the judgment, and this court will not weigh evidence where a general finding is supported by substantial testimony. (*Davis v. Davis*, 162 Kan. 701, 178 P. 2d 1015, and cases cited therein.) Similarly, the trial court has the right to draw reasonable inferences from the testimony of the witnesses. Where legitimate inferences are reasonably drawn from the evidence and supported thereby, this court will refuse to interfere with the findings of the trial court based upon such inferences. (*Davis v. Davis*, supra; and *Tuley v. Tuley*, 168 Kan. 106, 211 P. 2d 95.)

We shall review the evidence presented in its most favorable aspect to the defendant and make reasonable inferences therefrom. It is only fair to state that the testimony in this case is contradictory and that the trial court obviously rejected the plaintiff's evidence in finding as it did and in entering judgment for the defendant. The record is replete with instances which justified the trial court in rejecting the plaintiff's testimony in its entirety. We shall, therefore, not dwell upon plaintiff's evidence.

The plaintiff and defendant were married on the 31st day of

March, 1950, at which time the plaintiff (wife) was 46 years of age and the defendant (husband) 26. The record discloses that during the years, 1947 and 1948, the defendant worked with the plaintiff in the business of selling house trailers, and as a result thereof the defendant in March, 1948, made a demand upon the plaintiff for $2,500.00 as his part of the profit derived from trailer transactions and for other work which he had done for her. As a result of this demand the plaintiff paid defendant $2,500.00 cash on the 18th day of March, 1948, in settlement of his claim. The defendant testified that he carried this money into the marriage with him. The evidence also discloses that in April, 1949, the defendant purchased eight head of cattle for approximately $1,260.00 which were placed on the Leavenworth farm.

As a result of the marriage there were no children born, but the parties adopted an infant female child in 1951 who was 6 years of age at the time of the trial.

The plaintiff at the time of her marriage to the defendant, owned a farm in Leavenworth County, Kansas, consisting of approximately 190 acres with improvements; a partially constructed dwelling located at 2500 Grandview Blvd., in Kansas City, Kansas; and a large dwelling house at 14 North 16th Street in Kansas City, Kansas, which, prior to the marriage plaintiff's previous husband constructed into fifteen small apartments.

The defendant completed construction of a duplex on the foundation walls at 2500 Grandview, doing all the necessary work in construction, wiring, plumbing, installation of furnace and duct work, set all fixtures, painted the house, put approximately 600 windows in the steel casement frames, hauled all the material to the house and did a majority of the floor work. The gross income from rental of the duplex after completion was $175.00 per month. After the property settlement prior to the marriage both the defendant and the plaintiff purchased approximately twelve house trailers with money furnished by both. In all they made approximately $6,000.00 dealing in trailers, most of which went into the construction of the duplex on Grandview. The defendant claims his work on the duplex increased its value by $10,700.00.

The defendant managed and maintained fifteen small apartments on North 16th Street which were owned by the plaintiff. He completely tiled the floors of three apartments; painted in all of them, some as many as three or four times each; unstopped sewers and

sinks, and did all the plumbing and electrical maintenance. These apartments rented for $15.00 per week each when they were occupied.

In 1942 the plaintiff purchased the Leavenworth County farm for $8,600.00. At the time of the marriage the plaintiff still owed $6,500.00 on this farm. The defendant operated this farm for several years and made many improvements thereon. He made the house modern; put in a bathroom; painted the house, silo, barn, garage and chicken house; built fences; raised feed for the cattle; and put fertilizer on the farm. He procured a buyer and effected a sale of the farm for the sum of $25,000.00 in June, 1954, on contract. The unpaid balance at the time of the trial was $20,000.00, and no contention is advanced that the buyer is not responsible. The defendant purchased approximately $1,000.00 worth of farm machinery which he placed on the farm. This was sold with the farm and was included in the purchase price. The defendant's bank deposits in a Leavenworth bank from 1948 to 1951 totaled $4,362.98 and he testified that these were used in farming operations.

In June, 1952, the plaintiff sued the defendant for divorce, and he was placed under a restraining order. At the time of the separation the parties had approximately ninety head of cattle, thirty-nine of these belonged to the defendant and the remainder to the plaintiff. The plaintiff sold the defendant's cattle in November, 1952, and kept the proceeds. These cattle were of the approximate value of $5,000.00.

In December, 1952, that divorce action was dismissed and the parties resumed marital relations, but the defendant has never received any of the proceeds from the sale of the cattle.

The defendant's bank account in Leavenworth was a joint account and the defendant learned at the trial for the first time that plaintiff wrote checks on it. She had numerous individual bank accounts and conducted business in her name as Christeen Kelso, and under various alias names: Mrs. R. E. Henry, Beth Kelso, and Elizabeth C. Beck.

The defendant's receipts for his expenditures were in plaintiff's possession when the action was filed and she either has them or destroyed them. The plaintiff signed defendant's name on the title to his truck and gave it to a man working for her.

Although the foregoing facts are not corroborated in every detail related, in material respects they are amply corroborated by many

witnesses who observed the defendant work on the various properties. Facts relating to the sale of the farm were corroborated by the purchaser who testified as a witness, and documentary evidence corroborated many of the other facts. The values of the duplex and the lot at 2500 Grandview were the subject of independent testimony.

The defendant admitted that he had been violent toward the plaintiff on several occasions, but for the most part he said it was defending himself. The plaintiff came in at 5:00 a. m. one morning after being with her ex-husband all night, and as she opened the door the defendant slapped her whereupon she threatened to shoot the defendant displaying an automatic pistol. Plaintiff also threatened to poison the defendant; she became angry and without provocation assaulted the defendant by striking him over the head with a beer bottle while driving an automobile (corroborated by the plaintiff's sister-in-law), and similarly without provocation struck the defendant over the head with a beer bottle in a grocery store while defendant was carrying their adopted daughter (corroborated by the grocer). The bottle broke and a piece of flying glass cut the grocer. On still another occasion the plaintiff threatened to shoot the defendant displaying an automatic pistol (corroborated by one witness).

On May 2, 1955, when plaintiff filed her petition in this action she had exclusive control and possession of all of the property and funds of the parties. She turned the defendant out at a time when he was having a recurrence of a service-connected disability and in need of hospitalization. She immediately procured a restraining order against him without even giving him his clothes. At the time of trial, approximately eighteen months later, he had not yet recovered all his clothing.

The trial court found that the plaintiff "has not acted like a wife should" and granted the defendant a divorce on the ground of gross neglect of duty. While the trial court could have found the plaintiff guilty of extreme cruelty, it did not do so.

On the foregoing evidence the trial court was justified in granting a divorce on either or both of the grounds alleged by the defendant, extreme cruelty or gross neglect of duty. There is a considerable overlapping in these grounds for divorce. A single act of misconduct may easily fall into either category. The expression, "gross neglect of duty," is indefinite, and it is difficult to lay down any

general rule by which every case can be determined to be within or without its limits. Each case must be examined by itself. (*Smith v. Smith,* 22 Kan. 699.) Cruelty has been recognized as a possible element in gross neglect of duty. In *Smith v. Smith,* supra, abandonment for less than one year without circumstances of indignity, aggravation or cruelty was held not to constitute gross neglect of duty.

In the instant case the wife's seizure of all property and funds accumulated during the course of the marriage, coupled with her deliberate acts of cruelty toward the husband, warrant the reasonable inference that her design was calculated to drive the husband away from the home at the most opportune time after she had taken unto herself all of the property and accumulations of the marriage. This constitutes a gross neglect of marital duty.

The foregoing inference is borne out by a further incident. During the period of eighteen months in which this action was pending for trial in the lower court, the husband had reasonable visitation rights with the minor child. It became necessary as time progressed to procure a definite order from the court permitting visitation. This order required that the plaintiff deliver the child to the defendant at a specific hour on a day certain each week to effect proper visitation. Under this order the defendant saw the child only once, and on that occasion the child was delivered to the defendant by two ruffians employed by the plaintiff who severely assaulted the defendant on the occasion. These ruffians were prosecuted, found guilty and incarcerated in jail after trial in a lower court.

A case somewhat analogous is *Osterhout v. Osterhout,* 30 Kan. 746, 2 Pac. 869. The court there held that where property had been accumulated by the joint efforts of the parties, each has a right to have that property used for maintenance and support, and when the wife turns the husband out of the house in ill health and without funds, such misconduct constitutes gross neglect of duty.

Another case in which misuse of property by the wife constituted gross neglect of duty is *Hayn v. Hayn,* supra. It was there held that the flagrant waste of property whether it was the husband's or jointly acquired, during the husband's absence constituted a gross disregard of the wife's marital duty.

Plaintiff's contention that there was no corroborating testimony to the effect that she was guilty of gross neglect of duty is not borne

out by the record. The extent to which the evidence is corroborated has been heretofore stated. It is well settled in this state that the testimony given by the complaining spouse as to the delinquencies of the other spouse, alleged as grounds for the divorce, must be corroborated by evidence. The provisions of G. S. 1949, 60-1509, contain no exceptions, and courts are not permitted to nullify its intentment by reading exceptions into it. (*Rosander v. Rosander*, supra, and cases cited therein.) Mere corroboration of indignities and abuses which do not touch upon statutory grounds for divorce is insufficient. (*Walton v. Walton*, 166 Kan. 391, 202 P. 2d 197; and *Tuley v. Tuley*, supra.) While the difficulty of obtaining corroborating testimony concerning the conduct between spouses does, not eliminate the statutory requirement for corroboration, an application of the foregoing rule to the facts in cases decided does not require corroboration of each and every detail. The requirement is met if there remains corroborated testimony of acts sufficient to justify a judgment for divorce. (*Hayn v. Hayn*, supra; *Reiter v. Reiter*, 162 Kan. 275, 176 P. 2d 260; and *Stegmeir v. Stegmeir*, 158 Kan. 511, 148 P. 2d 755.) The acts concerning which the testimony of a spouse has been given may be corroborated by direct evidence or by circumstantial evidence. (*Stegmeir v. Stegmeir*, supra.) Furthermore, to sustain a ground for divorce the trial court has the right, in addition to a consideration of the direct testimony, to draw reasonable inferences from the testimony of a spouse, as well as from that of other witnesses, when such testimony has been corroborated. (*Tuley v. Tuley*, supra.)

Upon all the facts and circumstances presented by the record in the instant case we hold that there was direct corroborating testimony or evidence of a corroborating character from which inferences of gross neglect of duty on the part of the plaintiff could be drawn.

The plaintiff contends that the judgment is in violation of G. S. 1949, 60-1511, which provides in part:

". . . If the divorce shall be granted by reason of the fault or aggression of the wife, the court shall order restoration to her of the whole of her property, lands, tenements and hereditaments owned by her before, or by her separately acquired after such marriage, and not previously disposed of, and also the court may award the wife such share of her husband's real and personal property, or both, as to the court may appear just and reasonable; . . ."

It is argued that the trial court failed to comply with this statute because it did not order the restoration to plaintiff of that property

to which she had title before her marriage. While it is true that the plaintiff had title to all the real estate described in the journal entry prior to her marriage to the defendant, it does not follow that there has been no accumulation of property by the parties during the marriage. This court has never applied the foregoing statute in the manner plaintiff desires to have it applied in this case. In *Johnson v. Johnson,* 167 Kan. 624, 207 P. 2d 948, this court held that it was proper to include improvements on the wife's separate property in determining the amount and value of the parties' accumulated property.

A distinction between a wife's title to property and property "owned by her" at the time of the marriage is made in *Elliott v. Elliott,* 154 Kan. 145, 114 P. 2d 823. It was there recognized that 60-1511, *supra,* does not state that all real estate, to which the wife has the record title, shall be restored to her, but that the property, lands, etc., "owned by her" shall be awarded to her. In other words, the equities, interests or accumulations acquired during the marriage are to be equitably divided between husband and wife.

Similarly, in *Foote v. Foote,* 103 Kan. 279, 173 Pac. 290, a judgment was held correct which required the wife to pay the husband $200.00 by reason of improvements made on a homestead, the application for patent having been made by the wife prior to marriage. The court there imposed a *lien* upon the land to secure its payment. Similarly, in *Van Brunt v. Van Brunt,* 52 Kan. 380, 34 Pac. 1117, the court made an equitable division of property and gave the husband a money judgment against the wife where she had gained control of most of the parties' property at the time of the divorce.

A portion of G. S. 1949, 60-1511, not cited by the plaintiff but pertaining to a division of property acquired by the parties jointly during the marriage, reads:

". . . the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and *requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. . . .*"

This language clearly authorizes a money judgment as was done in the instant case.

The plaintiff's contention that the judgment is contrary to the evidence is no more than an assertion that the judgment is contrary

to the evidence presented by the plaintiff. The trial court resolved the conflict in evidence against the plaintiff and in view of the authorities heretofore cited further comment is unnecessary.

The evidence establishes that at the time of the divorce, the plaintiff had complete possession and control of all the parties' assets. The court generally found that the parties' assets had increased approximately $30,000.00 during the marriage as a result of the joint efforts of the parties. The court by its judgment was not dividing property which was not in existence, nor was it concerned with future earnings. The duplex was built and the parties own it. It was valued at approximately $12,500.00 and represents property to be divided. The farm contract was in existence with a balance due of $20,000.00. The buyer is responsible insofar as the evidence discloses, and it represents property before the court for division.

The burden was on the defendant to show an accumulation of property acquired during the period of the marriage as a result of his efforts. He did so by showing the work he did on the duplex, his work on the farm and farming operations, and his management and maintenance of the fifteen apartments. It is not claimed by the defendant that all of the products of his services were still in existence at the time of the divorce, but evidence relating to those activities was competent to show his right to share in what accumulation was in existence at that time, and to what extent he should share in that accumulation.

It was proper that the trial court should make the money judgment a lien on the property of the plaintiff. (*Foote v. Foote*, supra.)

After carefully reviewing the record and upon all the facts and circumstances therein presented, we cannot say that the trial court abused its discretion in awarding a money judgment for the defendant in the sum of $15,000.00 which was made a lien upon the plaintiff's property, and in granting him a divorce from the plaintiff. The judgment of the trial court is affirmed.

JACKSON, J., not participating.