No. 43,444

Robert E. Gardner, *Appellee*, v. Clara Lucille Gardner, *Appellant*.

(389 P. 2d 746)

Opinion filed March 7, 1964.

*W. R. Mathews*, of Winfield, argued the cause, and *Lawrence E. Christenson* and *Marion P. Mathews*, both of Winfield, were with him on the brief for the appellant.

*John A. Potucek*, of Wellington, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal by the wife (defendant-appellant) in a divorce action from an order of the trial court granting the husband (plaintiff-appellee) a divorce, a division of property, and custody of their two minor sons. The wife's cross petition for a divorce and child custody was denied.

The question presented is whether the trial court's decision was contrary to the law and the evidence.

The record discloses that during the trial to the court and at the close of the husband's case, the wife demurred to the husband's evidence. The demurrer was promptly overruled by the trial court. After the introduction of evidence both parties waived argument and judgment was entered for the husband. The wife's motion for a new trial was overruled, following which this appeal was duly perfected from the adverse judgment, the overruling of her demurrer, the overruling of her motion for a new trial, and all other adverse rulings.

No useful purpose would be served by reviewing the evidence in detail. It established that the parties were married on September 30, 1950. They enjoyed the normal marriage relationships during the early years of the marriage and two boys, ages two and five at the time of this action, were born to the couple. May 18, 1962,

seems to be the date set by the parties as the time when their matrimonial interests in each other terminated. However, the record indicates that difficulty had arisen long before this.

The wife often said that she no longer had any feelings whatsoever for her husband. She stated to several people that she was sorry they had ever had any children. This type of attitude was evident in the home as the wife became very impatient with the children. She stated several times that she would not consider trying to save the marriage just for the sake of the children.

The upkeep of the house was a factor, also, and as the marriage ties grew weaker the wife lost interest in cleaning and taking care of the home and she would let dishes pile up in the sink. There was evidence that she did not feed the family well. No hot meals were prepared unless it was soup and usually a meal consisted of lunchmeat. The wife never seemed to stay at home with the children and they were always with a baby sitter.

There was testimony from several people that the wife and another man were meeting at strange times and in rather strange places. The husband and his parents found the wife and this man parked in a secluded spot out in the country on one occasion. The husband testified to one instance when the wife left home one evening about 10:00 p. m. and she did not return until around 1:30 a. m. He said she was in an awful mess when she returned.

Finally, on May 18, 1962, the day the husband and his parents found the wife and the other man together, the wife left home. She told the husband she did not want any of his money, and she did not want the children. She said they were his and now he could raise them. When she left the oldest boy had the measles and the youngest had been exposed to them, but the wife did not call to see how the boys were getting along and she did not return home for five months. During this time and at the time of the trial the boys lived with their father. They appeared to be healthy and happy at the time of the trial. They had gained weight and seemed to be happy with their father. Witnesses stated the boys were well cared for and that the father was attentive and decent. The record discloses that the boys attended church with their father regularly.

The husband's petition (in accordance with G. S. 1949, 60-1519) merely alleged, as grounds for the divorce, gross neglect of duty and extreme cruelty in the language of G. S. 1961 Supp., 60-1501, without detail. The wife did not request a bill of particulars.

The appellant contends there was insufficient evidence to sup-

port the order of the trial court granting the appellee a divorce and custody of the children—that the appellee did not produce sufficient evidence to prove the grounds for divorce as set out in the petition, and that there was little or no corroborating testimony. (Citing G. S. 1949, 60-1509; *Kelso v. Kelso,* 182 Kan. 665, 324 P. 2d 165; and *Walton v. Walton,* 166 Kan. 391, 202 P. 2d 197.)

The law applicable to a case of this type has been adequately stated in *Kelso v. Kelso,* supra, to which reference is made.

In the instant case no specific findings were requested or made. The trial court simply made a general finding in favor of the husband that the wife was guilty of extreme cruelty toward the husband and the husband should be granted a divorce. Such finding carries with it as established all the facts necessary to support the judgment, and this court will not weigh evidence where a general finding is supported by substantial testimony.

In our opinion the evidence justified the granting of a divorce to the husband on the ground of extreme cruelty. (See, *Carpenter v. Carpenter,* 165 Kan. 42, 46, 193 P. 2d 196.)

The trial court was warranted in finding that the appellant had not acted as a wife should, and the evidence further established that the conduct of the appellant had entirely destroyed the legitimate ends of matrimony.

The appellant's contention that the trial court's decision was contrary to the evidence is no more than an assertion that the judgment was contrary to the evidence of the appellant. The trial court resolved the conflict in evidence against the appellant.

The appellant contends there was no corroboration of the appellee's testimony that she was guilty of extreme cruelty. This is not borne out by the record. It is well settled in this jurisdiction that the testimony given by the complaining spouse as to the delinquencies of the other spouse, alleged as grounds for the divorce, must be corroborated by evidence. The provisions of G. S. 1949, 60-1509, contain no exceptions, and courts are not permitted to nullify its intendment by reading exceptions into it. Mere corroboration of indignities and abuses which do not touch upon statutory grounds for divorce is insufficient. (*Kelso v. Kelso,* supra; and cases cited therein.)

This court has said that corroboration is not necessary to support every allegation throughout the course of mistreatment or every detail of a plaintiff's testimony. It is often exceedingly difficult to

obtain corroborating testimony concerning conduct between spouses due to the privacy of the relationship. It is not essential that corroborating testimony alone sustain the judgment. The principal purpose of our statute (60-1509, *supra*) is to prevent collusion between the parties to a divorce action, and there is no such indication in the record before us. (*Hoppe v. Hoppe*, 181 Kan. 428, 431, 312 P. 2d 215; and *Carter v. Carter*, 191 Kan. 80, 379 P. 2d 311.)

In the *Carter* case it was said:

". . . Furthermore, there was not only direct and corroborative testimony but also circumstantial evidence which the trial court could and did believe that defendant's actions deeply wounded plaintiff's feelings and worried her greatly, and that the legitimate ends and objects of matrimony had been utterly destroyed thereby. Corroborative testimony may be circumstantial as well as direct. A decision based on testimony corroborative in character and convincing to the trier of the facts will not be disturbed on appeal. . . ." (p. 82.)

Upon all the facts and circumstances presented by the record in the instant case, we hold there was direct corroborating testimony or evidence of a corroborating character from which inferences of extreme cruelty on the part of the defendant could have been drawn.

The appellant's last contention concerns the custody of the children. The appellant contends it was an abuse of judicial discretion to refuse custody to the mother.

This argument is founded on the fact that the trial court did not find the mother unfit. In view of the tender years of the children, and the favored position of the mother in the eyes of the law, she argues, the action of the trial court constituted a clear abuse of judicial discretion.

In the situation here presented the paramount consideration of the court is the welfare and best interests of the child. The court has recognized in a long line of cases that the trial court is in the best position to judge whether the best interests of a child are being served, and in the absence of abuse of judicial discretion this court will not disturb a trial court's judgment. (*Kimbell v. Kimbell*, 190 Kan. 488, 491, 376 P. 2d 881; *Jackson v. Jackson*, 181 Kan. 1, 309 P. 2d 705; *Goetz v. Goetz*, 180 Kan. 569, 306 P. 2d 167.) However, where an abuse is affirmatively shown in the record, this court has not hesitated to reverse, modify or otherwise change the order of a trial court. (*Lindbloom v. Lindbloom*, 177 Kan. 286, 279 P. 2d 243; *Wilkinson v. Wilkinson*, 147 Kan. 485, 77 P. 2d 946; *Jackson v. Jackson*, supra.)

There are two fundamental rules on this subject, and it is apparent the appellant has confused them.

Where the contest for child custody is between a parent and a third party, a parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to custody as against the third party or others who have no permanent or legal right to custody. (*McGuire v. McGuire,* 190 Kan. 524, 376 P. 2d 908; *In re Vallimont,* 182 Kan. 334, 321 P. 2d 190; *Heilman v. Heilman,* 181 Kan. 467, 473, 312 P. 2d 622; *Christlieb v. Christlieb,* 179 Kan. 408, 295 P. 2d 658.) This is true because the welfare and best interests of children are primarily the concern of their parents and not a party who has no permanent or legal right to the custody of the children. Thus, only when the parent or parents are unfit to have the custody, rearing and education of the children will the state step in through its legal process and find fitting custodians.

Where the issue exists only between the parents, as in the instant case, and no third party is involved, then the primary question to be determined by the court is the welfare and best interests of the children. All other questions are subordinate. (*Merriweather v. Merriweather,* 190 Kan. 598, 599, 376 P. 2d 921; *Kimbell v. Kimbell,* supra; *In re Vallimont,* supra; *Collins v. Collins,* 177 Kan. 50, 276 P. 2d 321.)

Thus, in the situation presented by the instant appeal, it was unnecessary to find one parent unfit before the other parent could be awarded custody. The fact that the trial court gave custody to the father, without finding the mother to be unfit, is not an abuse of judicial discretion so long as such decision is in the furtherance of the best interests of the children.

We cannot find that the trial court abused the exercise of its power of discretion in awarding custody of the children to the appellee, and, therefore, will not disturb the decision on appeal.

The judgment of the lower court is affirmed.

FONTRON, J., not participating.