DESKIN D. DAY V. MABEL A. DAY.

No. 13,953.   (80 Pac. 974.)

SYLLABUS BY THE COURT.

1. DIVORCE—*Expenses of Wife.*   When a petition is filed for a divorce and alimony, or for alimony alone, the court may make such order relative to the expenses of the suit as will insure to the wife an efficient preparation of her case, whether she is plaintiff or defendant in the suit.

2. ——— *Cohabitation after Adultery—Estoppel.*   When plaintiff alleges and offers testimony tending to show that his wife has been guilty of adultery, and it is disclosed that after learning of her misconduct he lived and cohabited with her for more than a year, he will be deemed to have condoned the offense, and it will not constitute a ground for divorce.

3. ——— *One Offense as a Bar to Another.*   The right to set up one matrimonial offense in bar of another is an application of the equitable rule that one who invokes the aid of a court must come into it with a clear conscience and clean hands.

4. ——— *Plaintiff Must be Guiltless.*   Divorce is a remedy for the innocent and injured, and the plaintiff who has himself broken the marriage contract cannot ask to be relieved from its obligations because his spouse may also have broken it.

5. ——— *"Equal Wrong" Means Statutory, Not Moral, Wrong.*   When it is shown that each party to a suit has been guilty of a matrimonial offense which the statute has made a ground for divorce they will be deemed to be in "equal wrong," and the court may in its discretion refuse to grant a divorce, although the offenses may not be of the same character.

Error from Labette district court; THOMAS J. FLAN-NELLY, judge.   Opinion filed May 6, 1905.   Affirmed.

*W. S. Hyatt,* and *Waggener, Doster & Orr,* for plaintiff in error.

*E. C. Clark,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a controversy between husband and wife. The plaintiff brought the suit asking for a divorce on the ground that his wife had been guilty of adultery, gross neglect of duty, and extreme cruelty. A female child was born of the marriage, which was about seven years old at the time of the trial, and for whose custody the plaintiff asked. In the answer and cross-petition of the defendant she denied the charges of marital misconduct, and alleged that the plaintiff had violated his marriage vows by frequent instances of extreme cruelty to her, and that he had also been guilty of gross and long-continued neglect of duty. She asked for a dissolution of the marriage relation, the custody of the little girl, and a division of the property that they had accumulated. At the end of his testimony the trial court, assuming that she had committed the acts charged against her, held that they had been condoned, and, therefore, that the plaintiff was not entitled to a divorce. She offered testimony tending to sustain the averments of her petition, and the court, finding that both plaintiff and defendant appeared to be in equal wrong, denied the divorce, awarded the custody of the child to its mother, ordered the husband to pay ten dollars per month towards its support, and directed an equitable division of the property.

Plaintiff complains, first, of the order of the court that required him to pay seventy-five dollars to the defendant as expense money and attorneys' fees prior to the time of her answer and the final adjudication. It appears to be contended that the statute does not warrant provision for the expenses of a suit by the wife, unless she is the plaintiff in the case. The court is authorized, after a petition has been filed in a suit for divorce and alimony, or for alimony alone, to "make such order relative to the expenses of the suit as will

insure to the wife an efficient preparation of her case."
(Gen. Stat. 1901, § 5137.)   The provision for "an effi-
cient preparation of her case" does not mean that her
case must be made upon a petition, and in the capacity
of plaintiff.   Preparation is just as important for her
in establishing her case against a plaintiff, upon an
answer or cross-petition, and the language employed
does not indicate a purpose to limit the provision to
instances wherein she is the moving party.

The next complaint is of the ruling of the court hold-
ing that the plaintiff's testimony did not warrant the
granting of the divorce.  He offered testimony tending
to show that his wife had adulterous relations with
Homer Craft, a young man living in the neighborhood,
and also testimony showing that she had been guilty
of unwifely conduct with others.   He states that
his wife admitted to him a number of adulterous
acts, running through a period of months, but he said
that she claimed that they were not voluntary on her
part.   It appeared, too, that Craft told the plaintiff in
detail of his relations with defendant, and yet he con-
tinued to live with his wife for about two years after
learning of her alleged criminal conduct.   During this
time there were jar and clash and bitter quarrels be-
tween them.   He frequently charged her with infidel-
ity, and at one time separated from her because of a
belief that she was guilty of adultery, but he stated
that he was induced by his uncle to return and live
with her on account of their child.   The trial court
assumed that his imputations of marital misconduct
were true, but found that they had been condoned, and
that he was therefore not entitled to a divorce.

Plaintiff argues that he forgave and reinstated his
wife on the theory and belief that she was compelled
to yield to the embraces of Craft, and that if he had
been assured of her guilt he would not have continued
to live with her.   An essential element of condonation
is a full knowledge by the injured spouse of the mari-

tal misconduct of the offender. If the plaintiff had only an unconfirmed suspicion that his wife had gone astray, or if he believed that the numerous acts of adultery brought to his attention were without her consent, his continuance of the marital relation might not amount to an effective forgiveness or condonation. (14 Cyc. 637.) Much of his own testimony, however, was wholly inconsistent with this theory. His frequent assertions that she was guilty, his separation from her on account of her alleged offenses and his return because of the child, the detailed information as to numerous acts of adultery related to him by Craft himself, together with the plaintiff's statements that he was forced to believe in her guilt, contradict his present claim of unbelief and want of knowledge, and justified the holding of the trial court that her offenses had been condoned.

She offered proof tending to show extreme cruelty and gross neglect of duty, and at the close of all the testimony the court found that both had violated their marriage vows and for that reason denied a divorce, awarded the custody of the minor child to the mother for the time being, and divided the property. It is contended that in any view that may be taken of the testimony there was not that mutuality of fault that justified the refusal of a divorce. In section 643 of the civil code it is provided that "when the parties appear to be in equal wrong the court may in its discretion refuse to grant a divorce," etc. It will be observed that the refusal of a divorce, when both parties are guilty of violating the marriage contract, is left to the discretion of the trial court. The right to set up one matrimonial offense in bar of another has long been recognized, and recrimination, as it is termed, has been regarded as a valid defense, even in the absence of a statute. It is no more than the application of the equitable rule that one who invokes the aid of a court must come into it with a clear conscience and clean

hands.   Divorce is a remedy for the innocent and injured, and the plaintiff that has himself broken the marriage contract cannot well ask to be relieved from its obligations because his spouse may also have broken it.   The rule is well stated in section 87 of volume 2 of the fifth edition of Bishop on Marriage and Divorce, where it is said:

"The matrimonial relation is one of mutual dependence and duty; and it would seem to be within all legal analogies, and all sound canons of morality, to refuse to hear a plaintiff complaining of the defendant's infraction of one of the links of this common chain, when he had equally broken another.   Moreover, the law is for the assistance of those who obey it, not those who violate it; and, when two parties are both in the same wrong, the court helps neither."

It is insisted, however, that there is not equality of wrong between the offense of adultery and the other wrongs for which a divorce may be granted.   The statutes, however, do not provide that the wrong shall be of the same character or proportioned in moral gravity.   Ten grounds for divorce are prescribed by the statute; and abandonment, when established, is just as effectual to dissolve the marriage relation as is the graver offense of adultery.   Since the legislature has treated each ground as the equal of any other, and visited upon each offense the same legal consequences, the court cannot well distinguish between them because one offense may appear to us to involve more of turpitude or disgrace than another.

In the ecclesiastical courts it was held that there could be no recrimination unless the offenses were of the same character, and some of the courts have undertaken to measure the gravity of the specified causes for divorce, and have refused to allow a cause to be barred by any matrimonial offense other than adultery.   (*Chambers v. Chambers,* 1 Hagg. Con. 439; *Cocksedge v. Cocksedge,* 1 Rob. Eccl. 90; *Bast v. Bast,* 82 Ill. 584; *Stiles v. Stiles,* 167 id. 576, 47 N. E. 867;

*Trowbridge v. Carlin,* 12 La. Ann. 882; *Thomas v. Tailleu,* 13 id. 127; *Dillon v. Dillon,* 32 id. 643; 1 Nels. Div. & Sep. § 430.)  The courts generally hold, however, that the rule of recrimination applies to all the causes for divorce, and that a suit for divorce on any one of the statutory grounds may be defeated by proof of the existence of another statutory ground, without regard to the nature or gravity of the several causes.  (*Nagel v. Nagel,* 12 Mo. 53; *Morrison v. Morrison,* 62 Mo. App. 299; *Church v. Church,* 16 R. I. 667, 19 Atl. 244, 7 L. R. A. 385; *Pease v. Pease,* 72 Wis. 136, 39 N. W. 133; *Hubbard v. Hubbard,* 74 id. 650, 43 N. W. 655, 6 L. R. A. 58; *Cassidy v. Cassidy,* 63 Cal. 352; *Tillison v. Tillison,* 63 Vt. 411, 22 Atl. 531; *Clapp v. Clapp,* 97 Mass. 531; *Handy v. Handy,* 124 id. 394; *Redington v. Redington,* 2 Colo. App. 8, 29 Pac. 811; *Wheeler v. Wheeler,* 18 Ore. 261, 24 Pac. 900; *Mattox v. Mattox,* 2 Ohio, 233, 15 Am. Dec. 547; *Ribet v. Ribet,* 39 Ala. 348; *Hale v. Hale,* 47 Tex. 336, 26 Am. St. Rep. 294; 14 Cyc. 650.)

We cannot say that there was not such equality of wrong as the statute contemplates.  The question was settled by the legislature, and the court in its discretion could, as it did, hold that the plaintiff, who had been guilty of extreme cruelty and gross neglect of duty, was in equal wrong with the defendant, who was guilty of adultery.

Complaint is made of the order giving to the mother the custody of the child.  The plaintiff proposed, if given the custody of the child, to place her in the home of a relative in Missouri.  He had no right to expect that the court would send the child out of the state and beyond its jurisdiction.  The mother keeps the child at the home of her parents, and if she is not given care and attention proportionate to her age and necessities, or if the surroundings prove to be unsuitable for her proper attention and development, the court can again exercise its authority and transfer her

custody to another. In its decree the court reserved to itself the right to change the custody of the child when it deemed best, as it provided that the mother should have the custody of the child until the further order of the court or the judge thereof.

Other objections are made which are not deemed to be material, and as we find no error the orders and judgment are affirmed.

All the Justices concurring.