No. 38,942

In re Estate of Crissie Anderson, Deceased. (CLAYTON P. ANDERSON, *Appellant,* v. WALTER A. ANDERSON, MARY ANDERSON NULTON, CLINTON C. ANDERSON, MILFORD H. ANDERSON, and D. BASIL RANKIN, Administrator *de bonis non,* with the will annexed of STELLA A. ANDERSON, Deceased, *Appellees.*)

(259 P. 2d 180)

*John Berglund, Jr.*, of Clay Center, argued the cause, and *Richard F. Mullins, Lester C. Arvin, Milo M. Unruh* and *Bernice Burket*, all of Wichita, were with him on the briefs for the appellant.

*W. M. Beall*, of Clay Center, argued the cause, and *Arthur S. Humphrey*, of Junction City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from a judgment of the district court refusing to set aside a judgment of final settlement and distribution of a decedent's estate by the probate court.

The estate involved was that of the mother of appellant, one of six children. The mother died testate and her will was admitted to probate in 1933. Final settlement was not had until April 29, 1949. Appellant was a patient in the state hospital on the latter date. All parties including appellant and his guardian were duly notified of the hearing for final settlement as required by law.

At the hearing for final settlement appellant was represented by his guardian appointed in 1943 and by counsel for the guardian who made objections to some of the matters involved in the petition for final settlement. His objections were sustained in part and overruled in part. No appeal was taken from that judgment.

Appellant was discharged from the state hospital a short time before March 2, 1950, when his full legal rights were restored. On November 15, 1950, he filed the instant petition to set aside the decree of final settlement and distribution on the grounds the probate court was without jurisdiction over him and his interests prior to the appointment of his guardian; that various acts of the executrix in the course of administration were fraudulent and void and that he was disadvantaged thereby to his financial loss. The action was transferred to the district court where it was tried *de novo* on evidence adduced by the respective parties. The executrix of the mother's estate died testate after the decree of final settlement but before the trial in the district court. The administrator of her estate was made a party defendant.

The foregoing facts are not intended to constitute an exhaustive statement but only a general outline of procedure and events. The district court made detailed findings of fact and conclusions of law which are appended for reference and made a part hereof. They also disclose the trial court resolved all other factual issues in favor of appellees.

If a motion to strike any of the findings made was filed it is not

indexed in appellant's abstract or in his two supplemental abstracts and we have not found it in the record presented here. The motion for new trial does not expressly specify the findings made as constituting error. Appellant, however, requested certain conclusions of fact and law. A review of the record indicates the trial court might have included some of the requested findings of fact but those particular facts are not of sufficient materiality to justify a reversal of the judgment.

The six children, all adults, one of whom was Stella A. Anderson, the executrix, obtained title to various tracts of land under the will of their father who had given his wife, Crissie Anderson, deceased, only a life estate therein. The mother owned some city lots and some personal property in her own right. After the mother's death in 1933 the children continued to maintain the ancestral country home. Their income from lands in which they had the remainder interest under the will of their father, and the income from property belonging to the estate of their mother, were not always handled in the most businesslike fashion or strictly in compliance with the law pertaining to the settlement of estates. The business was treated in many respects as a family affair characteristic of many similar cases in which estates are not speedily administered or under the proper guidance and direction of legal counsel. There appeared a desire among the children not to sell the real estate during the deflationary prices which obtained at the time of their mother's death in 1933 and for some years thereafter and to handle business transactions in accordance with the agreement of the parties.

Appellant first went to the state hospital in 1937. He remained there for a year or so on that particular occasion. He was permitted to leave and returned to the ancestral home and remained there until adjudicated insane in 1943. It appears that from the time of the mother's death in 1933 until appellant first went to the state hospital and again after his return to the family home and until 1943 he participated in the family business transactions and conducted all of his own private affairs. It is true the six children believed they were partners although they, of course, held all lands to which they obtained the remainder interest as tenants in common.

From 1943 appellant was represented by a guardian duly appointed for him. There is no indication the guardian ever objected to any of the transactions. Nor is there any indication the guardian believed appellant was being defrauded by the executrix or the

other members of the family with respect to his interests. In fact, there is testimony he had no occasion to so believe.

An executrix serves in a fiduciary capacity. She should be and is held to the exercise of utmost good faith in the discharge of her trust.

As indicated the administration of this estate covered a period of approximately sixteen years. The executrix was not a lawyer and was unfamiliar with legal procedures. It does not appear she willfully or otherwise violated direction of the probate court. Her failure to make regular accountings over that period or to obtain probate court authorization for partial disbursements to legatees or to use estate funds for the protection of interests of legatees, although irregular and improper, is not necessarily tantamount to fraud. This is especially true when no one, including a former incompetent, suffers loss or disadvantage as a result of any transaction and on the contrary all clearly obtain an advantage by reason of some of the transactions.

The burden of establishing appellant was overreached or defrauded rested on him. Fraud is never presumed: There is abundant evidence the executrix acted in perfectly good faith in an effort to preserve and protect the best interests of all concerned, including the appellant. The district court believed that testimony and expressly found no fraud either intrinsic or extrinsic was shown. In addition to the foregoing, irrespective of what the precise legal relation of the parties may have been, the trial court, in view of the testimony, was justified in finding appellant had not been overreached to his financial loss or detriment in any respect and that the manner in which his interest in the real estate was handled resulted to his advantage. Touching this subject and the absence of fraud see particularly findings 14, 15, 16 and 17.

Appellant also argues the $1,500 fee allowed to the executrix for her services during the sixteen years should not be upheld. He argues she appropriated some assets of the estate and with another brother used them during that period of time. There was no appeal from the allowance of that fee by the probate court. There is no testimony the allowance was procured by fraudulent representations or concealment of material facts. Furthermore it already has been indicated that whatever irregularities there may have been in the use of any estate funds by the executrix, or by her and another brother, without an express order of the probate court, such use was

not in bad faith or with the purpose and intent of depriving appellant of any interest he may have had in the estate. On the contrary it appears her conduct was prompted by a desire to preserve and protect the property of the estate and the income of the children from the lands they inherited from their father in a manner beneficial to all parties concerned, including appellant. It appears her attempt was successful. No other persons are interested in the result. We shall not say the court erred in the allowance of the modest fee in view of her good faith, the length of time involved and the nature of the services rendered.

We have not overlooked other alleged errors urged by appellant. It will serve no purpose to pursue them. We are persuaded they do not constitute reversible error. It was the trial court, not this court, which appellant was required to convince on the subject of fraud or overreaching to appellant's disadvantage. In that respect appellant failed.

The findings of the district court are supported by the record. Its findings justify the conclusions of law.

The judgment is affirmed.

"FINDINGS OF FACT

"1. Mrs. Crissie Anderson's will was admitted to probate in the Clay County Probate Court, November 21, 1933, and her daughter, Stella A. Anderson, duly qualified as executrix thereof. The proceedings for the probate of the will, executrix's appointment and all other proceedings were regular and no evidence was offered as to any lack of jurisdiction, unless it was petitioner's insanity.

"2. The petitioner, who had previously been a patient at the Topeka State Hospital, and who was a son of the said Crissie Anderson, deceased, was at the ancestral home when his mother died, and he continued to live there until on or about the month of October, 1937, when he voluntarily entered the State Hospital at Topeka, Kansas. He remained at that institution for a year or so and was then released as restored. He then returned to said home where he remained until he was adjudicated insane on July 14, 1943, and thereupon was recommitted to the State Hospital, where he remained until a short time before March 2, 1950, when his full legal rights were restored to him. Petitioner had a legal guardian from July 23, 1943, to March 4, 1950.

"3. Peter Anderson, husband of said Crissie Anderson, and the father of said petitioner and respondents herein, predeceased the said Crissie Anderson. He left a will, which was duly admitted to probate in the year 1917. Under his will he left his property to Crissie Anderson, his wife, for life, with remainder to his children, including these respondents and petitioner. Much of the property in controversy belonged to Peter Anderson when he died. His estate was closed in 1922.

"4. Notwithstanding the Peter Anderson estate was closed in 1922, yet, nevertheless, after the death of Crissie Anderson in 1933, the income from land

owned by that estate, freed by her death of her life interest, apparently was kept in a separate account and designated the Peter Anderson Estate, and that during the course of administration of the Crissie Anderson Estate, monies from said account were transferred from time to time to the Crissie Anderson estate account, and whenever in the evidence the Peter Anderson Estate was referred to, it meant the account carried in that name.

"5. The said Stella A. Anderson died before this proceeding was commenced.

"6. Petitioner and these respondents were among the heirs-at-law, legatees and devisees of said Peter Anderson and Crissie Anderson, both deceased.

"7. The petition for final settlement and allowance of final account and distribution came regularly on for hearing in the Probate Court of Clay County on April 29, 1949. Due notice was given petitioner and an order of final settlement was duly made on said date. Said hearing resulted in a fair and impartial distribution of the assets. Petitioner now seeks to have vacated and set aside the order of final settlement, filing his petition therefor on November 15, 1950.

"8. Much of the time of petitioner's legal incapacity was spent in the ancestral home with Stella A. Anderson and Milford H. Anderson, during which time petitioner participated actively with the said Stella A. Anderson in the handling of the estates and the operation of the farms.

"9. During the times petitioner was living at home he appears to have been fully competent to understand and transact business; and he actually did advise and assist Stella A. Anderson in handling the estate and participated in all of the transactions during such periods.

"10. The insanity of petitioner appeared in the record leading up to the final settlement and the irregularities of the administration and any errors all appeared in the proceedings.

"11. Both estates were handled with considerable informality, but with the knowledge, consent and approval of all the heirs, legatees and devisees, except possibly petitioner; and insofar as petitioner's mental condition permitted he had full knowledge of, consented to, and approved of the methods of handling said estates, and while he had a guardian, the guardian had full knowledge of and never objected to the same. All the claimed irregularities were disclosed by the final account, either affirmatively or by omission therefrom and their invalidity was at issue in the final settlement.

"12. Notwithstanding the irregularities and the informalities in connection with the administration of the estates, there is no intent shown on the part of anyone to take advantage of or defraud petitioner, and no conspiracy to do anything to prejudice rights of petitioner.

"13. On the attacked final settlement, petitioner was represented by his guardian and by the Hon. H. L. Sheppeard, competent counsel employed by the guardian. Said counsel filed a written defense for the purpose of correcting certain parts of the accounting. The Hon. Wayne W. Ryan, a competent lawyer, qualified as Probate Judge pro tem and heard the matter at length. Petitioner's objections were in part sustained and corrections made. No appeal was taken from the order of final settlement.

"14. The allowance by the Probate Court to Stella A. Anderson for her services was not excessive.

"15. By the settlement petitioner got the share of both estates to which he was entitled and from the evidence the court is convinced that if the settlement were reopened and tried again no different result would be reached.

"16. No fraud, either intrinsic or extrinsic, has been shown.

"17. None of the transactions of Stella A. Anderson attacked in Clayton P. Anderson's petition resulted in any financial loss or other detriment to him, and those by which he acquired an increased interest in the real estate turned out to be to his advantage because of the subsequent increase in land values.

"18. The relationship between the parties was believed by them to be a partnership, but whether it amounted to that at law is immaterial as petitioner suffered no loss or prejudice whether it was a partnership, tenancy in common, joint venture or other relationship. All the devisees were tenants in common of the real estate.

"19. All other factual issues are found in favor of respondents.

### "Conclusions of Law

"1. The Probate Court at all times had jurisdiction of the estate of Crissie Anderson, deceased, and its orders were valid and binding on petitioner.

"2. The order of final settlement is valid and should not be reopened.

"3. The Probate Court and the executrix never had jurisdiction over the real estate and any dominion over it exercised by Stella A. Anderson was in her individual capacity. If under the law the executrix did have jurisdiction of the real estate after July 1, 1939, the court would still conclude that she had sufficiently accounted.

"4. At the trial of this matter the first question to be determined by the court was whether or not there were grounds to vacate the judgment of final settlement. When the court determined that no such grounds existed, it became immaterial whether or not the accounting of the executrix might have been changed on a new hearing.

"5. Judgment should be entered in favor of respondents denying the petition of Clayton P. Anderson and taxing the costs against Clayton P. Anderson.

"It Is Therefore, by the court considered, ordered, adjudged and decreed that the petition of said Clayton P. Anderson, petitioner herein, be, and the same is, hereby denied, and the costs herein be, and the same are, hereby taxed against said petitioner, the said Clayton P. Anderson."