No. 40,326

EUDORA GOETZ, *Appellant,* v. ALBERT JOHN GOETZ, *Appellee.*

(306 P. 2d 167)

Opinion filed January 12, 1957.

*C. H. Morris*, of Wichita, argued the cause, and *Robert F. Bailey*, of Wichita, was with him on the briefs for appellant.

*Wesley E. Brown*, of Hutchinson, argued the cause, and *D. C. Martindell*, *W. D. P. Carey*, *Edw. B. Brabets* and *Elwin F. Cabbage*, of Hutchinson, *George B. Powers*, *Carl T. Smith*, *John F. Eberhardt*, *Robert C. Foulston* and *Robert M. Siefkin*, of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was a divorce action brought by the plaintiff wife, appellant, against the defendant husband, appellee, on the

grounds of extreme cruelty and gross neglect of duty. In addition to the divorce plaintiff asked for the custody of their two minor children; a reasonable sum for their support; an equitable division of the property, and that her separate property be awarded to her. The defendant answered and cross-petitioned, alleging the same grounds and sought custody of the minor children. Following trial by the court, a divorce was granted to the defendant; the property of the parties was divided and custody of the two minor children was awarded the plaintiff with rights of visitation by the defendant on alternate week ends with the privilege of removing them from the home as a part of the visitation; to have the children with him for the first half of the summer vacation; and, to pay child support in the sum of $200 per month.

Plaintiff has appealed, contending the trial court erred (1) in finding that defendant's testimony as to his grounds for divorce was corroborated; (2) in not setting aside to the plaintiff her separate property acquired by gift and by agreement of the parties on their previous reconciliation and abused its discretion in dividing the property jointly acquired by the marriage; (3) in denying plaintiff the right to introduce evidence of acts and conduct of the defendant prior to their reconciliation in October, 1954; (4) and abused its discretion in granting custody of the minor children to the defendant during half of the summer vacation and the right to remove them from their home as part of the right of visitation; (5) and abused its discretion in setting a minimum figure for the support of the minor children, and (6) in overruling plaintiff's motion for a new trial.

The parties were married in Wichita February 14, 1942, where appellee was engaged in the aircraft industry. They then moved to Ft. Worth, Texas, where he was engaged in similar work and later moved to Denver, Colorado, where he was employed by a large rubber manufacturing company on a special assignment to the production manager. They are the parents of two minor children, ages 8 and 11 years; both are from fine families; they are well educated and attended the same college where they kept company. The appellee has a degree in business administration and the appellant studied home economics and nutrition, she taught music in the public schools, she is a licensed cosmetologist, the holder of a real estate broker's license, she has studied various subjects such as child psychology and parent-child relationship, is a leader in the PTA organizations, and both are ambitious for the

welfare and normal development of their children. The appellee is considered an able business man of good judgment and was described by a business associate as a brilliant person.

In December, 1944, appellee's parents gave to him and his brother Harold a 440-acre farm in Ford County. The names of the appellee and his brother Harold appear as grantees in the deed filed of record in Ford County. Appellee's parents wrote a letter advising of the gift and addressed it to "Dear Albert, Eudora, and dear little Johnny" in which it was stated "We bought 440 acres of land and want to give you half and Harold half for your Christmas present." Appellee's father managed the farm and the appellee and his brother each received one-half of the income therefrom. All income from the farm received by appellee was included in the joint income tax returns of appellee and appellant.

In 1947 appellee and his family moved to Hutchinson where he and his brother Harold founded a manufacturing company; appellee was the president and general manager and received a salary of $350 per month until September, 1954. To finance their share of establishing this company, appellee and appellant sold their car, their furniture and cashed their government bonds. For some period of time they lived in a two-room motel; as the company grew and prospered financially they made investments in real estate in Hutchinson, which proved profitable, and later they acquired a home. Subsequently, the home was sold and the proceeds placed in a savings account in both their names. Marital difficulties arose resulting in appellant instituting an action for divorce against the appellee in the district court of Reno County in November, 1953, on the grounds of extreme cruelty and gross neglect of duty. Following lengthy negotiations the parties effected a reconciliation on October 5, 1954, and the divorce action in Reno County was dismissed by appellant with prejudice and she resumed living with the appellee upon the following conditions: That he sell his stock in the manufacturing company at par value for cash; that he obtain his share of the 1953 undivided profits and the company's note and mortgage for $10,000 payable to the parties jointly; that the money held in joint deposit in Hutchinson be transferred to the sole deposit of appellant with which to purchase a new home in Wichita and if the purchase price exceeded the amount available in this fund, a note and mortgage would be executed for the balance and appellee would insure his life in sufficient amount to guarantee payment in

case of his death; that appellee would perform the responsibility of providing for the family and appellant would assume the responsibility of keeping the home and the family, but, with the understanding she had the right to engage in outside business activities; that the balance of the money appellee received from the sale of the manufacturing company's stock would be used by him to re-establish himself in business and appellant would be kept fully informed with respect to his business transactions, his debts and contingent liabilities; that he make full disclosure to her of his social and business affairs; that he would be temperate with his drinking habits, and would bestow his love and affection upon the appellant.

In September, 1954, appellant and the two minor children moved to Wichita where she rented a home. Following the reconciliation in October, 1954, appellee moved to Wichita and joined his wife and sons. In compliance with their reconciliation agreement he deposited in appellant's name in the First National Bank of Wichita $26,989.56. The record is not clear as to whether this money was from the sale of the stock in the manufacturing company or from their joint savings accounts in Hutchinson, or both. However, it was conceded by both parties this fund was to be used by appellant to purchase or build a new home for their family needs. Within 30 days after appellee went to Wichita and in compliance with their agreement, the parties commenced the construction of a new home. Appellant took a big responsibility in selecting the floor coverings, curtains, paint and wallpaper. The house was large; it contained some 3,000 square feet, three ceramic bathrooms, a complete music system and many other features of luxurious comfort. All of the money deposited in appellant's name in the First National Bank in Wichita was used in the construction of this home. Following the completion of the home and on January 1, 1955, appellant concluded she would not live in it and later sold it for $46,200 of which $30,000 was redeposited in the First National Bank of Wichita to her separate account.

A building site on North Roosevelt Street in Wichita was purchased from the joint account of the parties and title was taken in the names of both of them, which property was jointly owned when this cause was tried. Later, appellee built a house on North Yale in Wichita as an investment. The parties' joint money was used in the construction of this house and it was sold for $16,801.96 and

the proceeds deposited in the Boulevard State Bank in Wichita. Pending these proceedings this fund was placed in the custody of the trial court until final disposition of the action.

The record indicates appellant and appellee did their utmost from the standpoint of their reconciliation to live together; both consulted the family Consultation Service in Wichita and a psychiatrist, and despite their diligent efforts to maintain a home together, the evidence clearly indicates their complete incompatibility and both parties conceded the trial court should grant a divorce to one of them.

Appellant instituted this action on September 9, 1955. A trial by the court was concluded February 21, 1956, and on February 29, 1956, counsel for both parties were advised of the trial court's decision and judgment. The journal entry discloses that the trial court, without specifying their value, awarded appellant, free and clear of any claim or interest of appellee, the 1955 Dodge sedan; the household furnishings then in her possession; the building site located on North Roosevelt Street in Wichita, and the sum of $15,000. The appellee was awarded as his sole and separate property, free and clear of all claim of the appellant, the 1954 Dodge sedan; the undivided one-half interest in the Ford County farm and the balance of cash owned by the parties whether in the name of appellant or appellee or in a special account in the approximate sum of $24,766.85. The appellee was ordered to pay appellant's attorneys' fees of $2,500 from the money awarded him. The trial court stated that it had attempted to divide the property equally, less the Ford County farm, between appellant and appellee and further stated the Ford County farm was awarded to appellee free and clear of any claim of appellant for the reason he was required to support the minor children.

We note appellant's first contention that the trial court erred in granting the divorce to appellee. Her argument is that the testimony of appellee was not sufficiently corroborated by other testimony. She directs our attention to G. S. 1949, 60-1509, *Frye v. Frye*, 134 Kan. 3, 4 P. 2d 415, *Walton v. Walton*, 166 Kan. 391, 202 P. 2d 197, *Smeltzer v. Smeltzer*, 175 Kan. 293, 262 P. 2d 826, *Rosander v. Rosander*, 177 Kan. 45, 276 P. 2d 338. No useful purpose would be served by setting forth in detail the evidence of the parties as to either their defaults or neglects but suffice it to say we have carefully reviewed the record and conclude the appellee's

evidence was sufficiently corroborated in compliance with the requirements of the statute as to authorize the trial court to grant the appellee the divorce. Not only was there direct and corroborating evidence but also circumstantial evidence which the trial court could and did believe that appellant's acts and conduct destroyed the legitimate ends of their marital relationship. Neither party entertained the idea that a divorce should not be granted nor did they demur to the evidence and upon completion of the trial the appellee was granted the divorce. We need not discuss each detailed fact for the purpose of determining whether it falls precisely within the legal contemplation of extreme mental cruelty or gross neglect of duty but some of the facts tend to support both grounds. There was substantial competent evidence, sufficiently corroborated, to support the trial court's judgment granting appellee the divorce.

Appellant contends the trial court erroneously denied her the right to introduce evidence of alleged acts of misconduct of the appellee prior to their reconciliation in October, 1954. She pleaded in her petition the institution of the divorce action in Reno County in November, 1953, and the reconciliation of the parties which followed. In her Bill of Particulars she alleged "that on or about the 5th day of October, 1954, a divorce action pending in the district court of Reno County, Kansas, was dismissed by the plaintiff, Eudora Goetz, and the plaintiff and defendant became reconciled and resumed living together in Wichita, Sedgwick County, Kansas." She repleaded all of defendants prior acts of misconduct and alleged that the reconciliation was effected upon specific conditions (hereinabove set forth); that the appellee had no intention of living up to the assurances and representations he made at the time of their reconciliation and that they were made by him for the sole purpose of resuming marital relations to cause her to legally condone the acts of extreme cruelty and gross neglect of duty which he had previously committed, and that because of appellee's misrepresentation and fraud she renewed all of the allegations and statements of fact upon which she relied for divorce in the Reno County action. Appellant's chief complaint in this respect is the refusal of the trial court to admit into evidence plaintiff's Exhibit 7, which was a copy of a letter written by appellant's counsel to appellee's counsel on April 7, 1954, some five months prior to the dismissal of the divorce action in Reno County, and allegedly concerned her complaints against the appellee "of drinking and association with other women,"

and some of her objections to his continuing with the manufacturing company in Hutchinson. It should here be noted that plaintiff's Exhibit 3 was admitted in evidence, a letter dated September 29, 1954, from appellee's counsel to appellant's counsel pertaining to the final disposition of the divorce action in Reno County, and enclosed, among other things, the journal entry of dismissal with prejudice at the cost of the defendant. Appellant testified she "approved and accepted it (Exhibit 3) and it was on this basis that I and my husband went back together." In presenting appellant's case in chief, counsel offered and then withdrew Exhibit 7. However, when appellee testified in his own behalf, the exhibit was not referred to by his counsel on direct examination but counsel for appellant questioned him concerning its contents and the appellee answered some of the questions in a general way. Having done so, appellant reoffered the exhibit and upon appellee's objection, its admission was denied. Considering all of appellant's testimony in the light most favorable to her, the trial court did not err in this ruling.

It is well settled in this jurisdiction that the condonation of a marital offense, except the offense of adultery (*Day v. Day*, 71 Kan. 385, 80 Pac. 974) is not absolute but is conditioned upon the future good conduct of the offending spouse (*Brown v. Brown*, 171 Kan. 249, 252, 232 P. 2d 603; 32 A. L. R. 2d 102; 27 C. J. S. Divorce, § 62, p. 616), and, as a general rule, on a breach of the condition the original offense is revived (*Entsminger v. Entsminger*, 99 Kan. 362, 161 Pac. 607; *Mecke v. Mecke*, 126 Kan. 760 Syl. ¶ 2, 271 Pac. 275; *Lassen v. Lassen*, 134 Kan. 436, 7 P. 2d 120; *Reiter v. Reiter*, 162 Kan. 275, 278, 176 P. 2d 260), but where the act relied on as constituting a breach of condition of the condonation is due to the fault or connivance of the complaining party, the offense is not revived (27 C. J. S. Divorce, § 62, p. 616). Likewise, a repetition of the offense after condonation revives the original offense (*Mecke v. Mecke*, supra, *Reiter v. Reiter*, supra) and if condonation takes place after acts of cruelty, subsequent cruel conduct of the guilty party revives the former acts and permits a divorce on the grounds of all acts of cruelty either before or after the condonation and it is not limited by a repetition of the same offense, but also by subsequent commission of other marital offenses, nor is it essential that the subsequent acts of misconduct of the offending spouse be such as in themselves justify a divorce (*Brown v. Brown*, supra). How-

ever, where the injured party has knowledge of acts of cruelty and forgives the guilty spouse and there is a reconciliation and restoration of marital rights, it will stand as a bar as grounds for divorce unless there are elements present vitiating the conditions on which the condonation occurred.

Appellant pleaded, and here argues, that there was no condonation because she was induced into the reconciliation by the false and fraudulent statements of the appellee. The rule is recognized in 17 Am. Jur., Divorce and Separation, § 204, p. 252 and 27 C. J. S., Divorce, §§ 59, 60, pp. 608, 612 that fraud inducing condonation prevents the latter from taking effect, however, this rule must be applied in consideration of the well-established maxim: "Fraud is never presumed; it must be proved by a preponderance of the evidence" (*In re Estate of Anderson*, 175 Kan. 18, 259 P. 2d 180).

The record is completely devoid of testimony that the appellee, or, for that matter, either of the parties, did not enter into the reconciliation agreement in good faith. Moreover, the appellee performed all of the conditions prescribed by the appellant for the resumption of their marital life; he sold his stock in the manufacturing company and moved to Wichita where his wife and children were; he caused to be deposited in her separate account $26,989.56 with which to build a home for their family, and as soon as possible a new home was built, which the appellant later sold; his attempts to enter the business field were thwarted and his efforts to bestow love and affection upon his wife were rejected. While the appellee did keep beer in the refrigerator at home and drank of it frequently, appellant's own testimony was that since October, 1954, he did not drink excessively, and that occasionally they drank highballs together. It is apparent the trial court did not consider appellee's drinking habits a sufficient violation of the reconciliation agreement to revive the alleged prior acts of misconduct, and, on the basis of this record, we think its conclusion was correct. Appellee's alleged acts of prior misconduct were inadmissible until appellant established a violation of the conditions upon which the reconciliation was effected by showing marital misconduct on the part of the appellee subsequent to October, 1954, but the appellant did not sustain this burden. Consequently, appellant's Exhibit 7, standing alone, was inadmissible and the trial court did not err in rejecting it.

Appellant next contends that the trial court abused its discretion in the division of the property. The precise question has been

before this court many times and it has been held that under G. S. 1949, 60-1511, when a husband is granted a divorce by reason of the fault of the wife, the trial court is clearly vested with power to make such a division of property as may appear to be just irrespective of whether such property has been jointly acquired or is the separate property of the husband. (*Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127; *Walno v. Walno,* 164 Kan. 620, 192 P. 2d 165; *Johnson v. Johnson,* 167 Kan. 624, 207 P. 2d 948; *Harris v. Harris,* 169 Kan. 339, 219 P. 2d 454; *Henry v. Henry,* 171 Kan. 307, 232 P. 2d 473; *Reedy v. Reedy,* 175 Kan. 438, 264 P. 2d 913; *Perry v. Perry,* 176 Kan. 1, 268 P. 2d 938.)

It is not the function of this court to retry divorce cases and divide the property between the husband and wife. We will, however, as we have done here, review the record for the purpose of determining whether the trial court's findings have a factual basis in the evidence and whether its discretion in the matter of division of property has been abused. (*Henry v. Henry,* 171 Kan. 307, 232 P. 2d 473.) In *Reedy v. Reedy,* supra, it was said:

". . . This discretion is a judicial and not an arbitrary one. Discretion may be defined as the freedom to act according to one's judgment. Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence—to act upon fair judicial consideration, and not arbitrarily. When so acting in a matter committed to the discretion of the court by the law the judgment ought not to be overruled by a reviewing court, for to do so would be to deny the right to exercise the discretion given by the law itself. . . ." (l. c. 440.)

Appellant contends that one-half of the money deposited in her separate account in the First National Bank in Wichita was a gift to her and that it was error not to award her this amount as her separate property. She testified on redirect examination she was making no claim to the money "other than for what it was designated for, for a home" and that the home was to be built for both of the parties. The appellee testified "I was to take the cash that we had in savings and transfer it to her bank account to be used to build a home for us here in Wichita." The contention is not supported by the record.

Appellant further contends the trial court should have set apart to her an undivided one-sixth interest in the Ford County farm as her separate property, the contention being that the farm was a Christmas gift to each member of their family and that she, appellee

and their son Johnny each owned an undivided one-sixth interest. She cites and relies upon *Mann v. Mann*, 136 Kan. 331, 15 P. 2d 478 to the effect that if a wife acquires property, by purchase or gift, the court has no power other than to set it aside to her; and, *Korber v. Korber*, 163 Kan. 685, 186 P. 2d 241 holding that gifts to the wife from her husband including those from other persons, become her separate property under the statute. She argues that in determining whether the gift was to her and Johnny as well as to the appellee the letter from appellee's parents advising of the gift constitutes a part of the same transaction, is contemporaneous with the execution of the deed and they must be construed together; and, that income from the farm was considered as joint family income further evidencing joint ownership of the property. The point is not well taken. While the letter of December, 1944, was addressed to the appellee, the appellant and "dear little Johnny" its context and postscript indicate that the gift was solely to Albert and Harold; that the farm was purchased as early as August prior to Christmas in 1944, and that it was not written, therefore, contemporaneously with the execution of the deed. Moreover, the two brothers were the grantees named in the deed. In addition, the record indicates that title to the farm was never in appellee's parents, but was conveyed by the grantor directly to appellee and his brother and that full ownership as well as legal title to the farm was vested in them. Neither does the fact that income from the farm was reported on the parties' joint income tax returns indicate joint ownership of the property. 26 U. S. C. A. § 6013(a) provides in part that a husband and wife may make a single return jointly of income taxes, even though one of the spouses has neither gross income nor deductions. When the letter, the deed, and the facts and circumstances surrounding the execution of the deed are considered together they support, as against the contention of the appellant, the decision of the trial court awarding full ownership of an undivided one-half interest in the Ford County farm to the appellee. We have made a careful review of the record before us and while it would seem that in view of the amount and kind of property owned by the parties the husband received a liberal award, we cannot say as a matter of law that the trial court abused its discretion in dividing the property as it did.

Appellant contends that the trial court abused its discretion in its custody and support order. The contention is not persuasive. The

trial court had before it the evidence concerning the fitness of both parties in caring for the minor children and concluded to award custody to the mother with the right of visitation on alternate weekends to the father with the right to take them from their home and keep them with him during each period of visitation and to have them with him the first part of the summer vacation. In *Travis v. Travis,* 163 Kan. 54, 180 P. 2d 310 it was said:

". . . The trial court had the parties and the witnesses before it, it had the grave responsibility of determining the best interests of the child, and being aware of its power to change its order at any time, may well have concluded to make the order as it did and see what would develop. (See *Janney v. Janney,* supra.) Perhaps on the evidence adduced, this court might have made a different order, but that is not a test. Rather, on the present record we must be able to say, as a matter of law, that the trial court abused its discretion, and that we cannot say."

Neither party was found to be unfit to have the custody of the minor children and the trial court concluded that their welfare would be best served by placing their custody as it did. There is evidence in the record which might warrant a different order but we are not concerned with the credibility of the witnesses or the weight of their testimony; those were matters for the trial court. Considering the record as a whole we are not disposed to say, as a matter of law, that the trial court abused its discretion in this respect. There is no affirmative showing of the abuse of its discretion and in the absence of such showing, the judgment of the trial court will not be disturbed on appeal. (*Hayn v. Hayn,* supra.) Nor has it been made to appear that the trial court abused its discretion in setting a minimum figure for the support of the minor children. Our statute G. S. 1955 Supp., 60-1510 expressly provides that the trial court may modify or change any order with respect to the custody, support and education of the minor children whenever circumstances warrant such change. As has been noted, both appellant and appellee are ambitious for the welfare, education and development of their children. If the amount ordered to be paid for this purpose is found to be insufficient in the future, the trial court may and should modify its present order to require the appellee to provide adequate funds to insure the accomplishment of this objective. But, this is a matter for the trial court and we cannot say it abused its discretion in making the order it did for the support and education of the minor children.

Appellant lastly contends that the trial court erred in overruling

her motion for a new trial. The argument on this point is repetitious in a large measure of what has been heretofore discussed and needs no further comment. It has not been made to appear the trial court erred in overruling appellant's motion for a new trial.

It follows from what has been said that the judgment of the trial court should be and it is hereby affirmed.

HALL, J., not participating.