Fuld, J.
(dissenting). I very much fear that, if this decision stands, a method will have been devised by which the Fourth Amendment’s prohibition against unreasonable searches may be evaded and the exclusionary rule of Mapp v. Ohio (367 U. S. 643), to a large extent, written off the books.
It must be noted at the outset that the question to which the majority primarily addresses itself—“ the right of police to stop a person in the public street and question him ” (opinion, p. 443)—is not the one the court is called upon to decide and it should not divert us from the question for decision. Simply put, it is whether it is constitutional for the police, without consent, without a search warrant and without probable cause, to conduct the sort of search of a person which the People term a “frisk” and seize evidence for use against him in a criminal prosecution. Significantly, neither People v. Marendi (213 N. Y. 600) nor any of the other decisions cited by the court (opinion, pp. 445-446) deals with this question and, indeed, with perhaps two or three exceptions, none of them have anything to do with the subject of search and seizure.
It is settled beyond dispute that a search, not authorized by consent or a search warrant, is deemed reasonable, in the con *449 stitutional sense, only if conducted as “incident to a lawful arrest ” (People v. Loria, 10 N Y 2d 368, 373; see, also, People v. O’Neill, 11 N Y 2d 148, 152; Rios v. United States, 364 U. S. 253, 261-262; Henry v. United States, 361 U. S. 98, 100 et seq.). And a lawful arrest, when not grounded on a warrant, requires, at the very least, “ reasonable cause for believing ” that a crime has been or is being committed and that the person arrested is the responsible party (Code Crim. Pro., § 177). From this, it follows that the lawfulness of any search carried on without a warrant depends “ on there being probable cause to make the arrest ”. (People v. Loria, 10 N Y 2d 368, 373, supra; see Wong Sun v. United States, 371 U. S. 471, 478, fn. 6.)
That two men are out walking late at night, that they stop outside a bar and grill, look in the window, continue to walk a few- steps, retrace their steps and again gaze into the window and then walk rapidly away, certainly does not furnish probable cause for believing that they have been or are engaged in criminal activity- and, indeed, the People recognize that this is so. In fact, they concede that, at the time the policeman stopped the defendant, he had no probable cause to arrest him and, accordingly, that any search of the defendant at that time could not have been justified as incident to a lawful arrest.[1] But, the prosecution goes on to say, a " frisk ", not a search, was here involved and, consequently, " suspicion" on the part of the officer, not probable cause, was all that was required to justify his action.
This is nothing but an exercise in semantics; a search by any other name is still a search. Viewed in the perspective of constitutionally protected interests, a police tactic—call it a search or, more euphemistically, a “frisk”—which leads to discovery of a gun in an individual’s pocket by trespassing on his person is indisputably an invasion of privacy. A ‘ ‘ frisk ’ ’ *450 is a species of search and, in point of fact, both decisions and dictionaries so define it. Thus, the Connecticut Supreme Court wrote that “The ‘ frisking ’ of the defendant, as he stood against the car, to see if he was armed was also a search of the person” (State v. Collins, 150 Conn. 488, 491) and Webster’s New International Dictionary ([2d ed.], p. 1010) likewise indicates that to “frisk” means to “search (a person), as for concealed weapons, stolen articles, etc., esp. after arrest, as by running the hand rapidly over the clothing, through the pockets, etc.”
For myself, I am not persuaded that a frisk is as slight an affront to privacy and liberty as my brethren make it out to be. Free men should no more be subject to having the police run their hands over their pockets than through them. Neither the Fourth Amendment nor, for that matter, the common law of tort distinguishes, as does the majority, between a cursory search and a more elaborate one. In both instances, it is the slightest touching which is condemned, and the reason for this is that the insult to individuality, to individual liberty, is as grave and as objectionable in the one case as in the other.
The fact that a weapon was found on the defendant’s person may no more be relied upon to justify a frisk than an arrest. Police conduct, it has been pointedly remarked, ‘ ‘ is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest” (Henry v. United States, 361 U. S. 98, 104, supra) —• or, I would add, easy search. In short, then, if, at the time the police officer approached the two men, he had no probable cause to believe that a crime had been or was being committed, his act of running his hands over the clothing and body of the defendant Rivera cannot be considered reasonable by constitutional standards and, if the exclusionary rule mandated by the decision in Mapp (367 U. S. 643, supra) is not to be circumvented, articles thus uncovered cannot be received in evidence.
Rivera, it may be urged, deserves little consideration but we must not forget that the principle we lay down in his case *451 will apply to all, that the innocent and law abiding, as well as the culpable, will be subject to the indignity of a frisk. Highly developed though a policeman’s instinct for crime detection may be, it is still far from infallible and he cannot be expected to unerringly select, and frisk, only the gun-carrying wrongdoer. We all foresake a goodly measure of our freedom if we must walk the streets with the knowledge that we may, at any moment, be frisked because an overly zealous or inexperienced police officer feels that we are acting suspiciously.
The possibility of abuse looms too large to permit an invasion of privacy or an infringement of liberty to turn “ on the subjective state of mind of the policeman.” (Report and Recommendations of the District of Columbia Commissioners’ Committee on Police Arrests for Investigation [1962], p. 32.) The Constitution prohibits unreasonable searches and seizures, and reliance upon ‘‘any standard less than ‘ probable cause ’ is ‘ unreasonable ’ in the constitutional sense” (Report and Recommendations, lac. cit., p. 33). We should not, indeed we may not, permit a policeman’s purely subjective feeling — about the possibility of danger to himself — to replace that standard and become the controlling measure of an individual’s constitutional rights.
I have no doubt that the police, in the proper performance of their duties, have a responsibility to investigate suspicious activity and that one permissible form of investigation is the temporary stopping and questioning of individuals so engaged. (See, e.g., Ellis v. United States, 264 P. 2d 372, cert. den. 359 U. S. 998; Green v. United States, 259 P. 2d 180, cert. den. 359 U. S. 917.) This power to investigate, however, does not give a policeman license to violate the individual’s constitutional right not to be searched except on probable cause. In other words, although “ suspicion” may well be sufficient basis for a policeman to stop and question an individual, it furnishes no ground for an examination of his person since, as Justice Douglas reminds us, ‘‘ There is no crime known as ‘ suspicion ’ ’ ’ and the Fourth Amendment allows searches ‘‘ only for ‘ probable cause’”. (Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L. J. 1, 12, 13.)
I cannot subscribe to the court’s view that the legality of the frisk (or search) must necessarily be granted once the right *452 of the officer to stop and question is recognized. This is neither good logic nor sound constitutional policy. Both factually and constitutionally, inquiry is distinguishable from search. While the police may properly inquire into suspicious or unusual activity, they may not, in light of the line drawn by the Constitution’s prohibition against unreasonable searches, go so far as to search a person unless and until their subjective “ suspicion ” is objectified into “ probable cause ”. To say, as the majority does, that there are risks inherent in the investigatory activities undertaken by the police is to state the obvious. But it is quite another thing to conclude from this fact alone that the police are privileged to “frisk” every suspicious looking individual, in direct contravention of an explicit constitutional prohibition.
The courts may not, of course, close their eyes to the hazards run by sincere and dedicated policemen in their efforts to combat crime. Their exposure to danger should be minimized and every effort made to assure their self-protection. This worthy objective should not, however, lead us to sanction procedures which offend against basic constitutional guarantees, for, as the Supreme 'Court observed in Spano v. New York (360 U. S. 315, 320-321), “ in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves ’ ’. The loss of liberty entailed in authorizing a species of search on the basis of mere suspicion is too high a price to pay for the small measure of added security it promises. Other methods are available whereby the police may protect themselves while carrying on their investigations, other procedures which, if utilized, will safeguard the police and the community from the criminal minority without destroying the sense of dignity and freedom with which the law-abiding majority walk the streets.
To what end security if liberty be' sacrificed as its price Í The privacy which the Constitution guarantees is assured to the best of men only if it is vouchsafed to the worst, however distasteful that may be. Thus, although the defendant before us undoubtedly merits the punishment provided by law for carrying a concealed weapon, I venture that it is better that he *453 go free than that we sanction a significant inroad on the rights of all our citizens.
The order appealed from should be affirmed.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke and Scileppi concur with Judge Bergan; Judge Fuld dissents in a separate opinion.
Order reversed and matter remitted to the Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

. Since it is no-t here decisive of the issue of the legality of the search, nothing is to be gained by considering whether the defendant was, at the time of the frisk, merely being “ detained ” by the detective or whether the latter’s command, “ Hold it. This is the police ”, taken with the defendant’s submission to the order, amounted to an “arrest”. (Code Crim. Pro., §§ 167, 171; see People v. Chiagles, 237 N. Y. 193, 197; United States v. Scott, 149 F. Supp. 837; see, also, Sobel, Law of Search & Seizure [1962], p. 64; Collings, Toward Workable Rules of Search and Seizure — An Amicus Curiae Brief, 50 Cal. L. Rev. 421, 435-437.)